Aaron **HENRY** et al., Plaintiffs,

v.

**FIRST NATIONAL BANK OF CLARKS-DALE et al., Defendants.**

No. DC 69–58–S.

United States District Court,
N. D. Mississippi,
Delta Division.

June 9, 1970.

Lawrence D. Ross, Jack H. Young, Armand Derfner, Reuben V. Anderson, Jackson, Miss., for plaintiffs, intervenors.

Lawrence J. Franck, Jackson, Miss., for MAP.

254

Tom T. Ross, Clarksdale, Miss., for defendant First Natl. Bank of Clarksdale.

Dixon L. Pyles and Betty B. Tucker, of Pyles & Tucker, Dan H. Shell, of Satterfield, Shell, Williams & Buford, W. E. Gore, Jr., Jackson, Miss., for defendants Claiborne Hardware Co. and others.

## MEMORANDUM OPINION

ORMA R. SMITH, District Judge.

This action has been submitted to the Court on numerous motions filed herein by the parties. In order to understand the issues presented by the motions it is proper that a chronological résumé be made of the procedural steps which have been taken herein.

The many issues before the Court have grown out of the filing of a suit in the Chancery Court, First Judicial District, Hinds County, Mississippi.[1] On or about November 4, 1969, Claiborne Hardware Company, Inc., and others, most of whom are resident citizens of the City of Port Gibson, Claiborne County, Mississippi, filed a Bill of Complaint in the State Court to enjoin the National Association For The Advancement Of Colored People (NAACP), a foreign corporation organized and existing by virtue of the laws of the State of New York, but authorized to do and doing business in the State of Mississippi, the Mississippi Action For Progress, (MAP), a nonprofit Mississippi Corporation, and numerous individuals from picketing or causing to be picketed and from encouraging or causing to be encouraged a boycott of the businesses of complainants in the City of Port Gibson. The complainants also sought damages from the defendants in the aggregate sum of $3,542,466.04.

The complainants in the State Action prayed for and obtained a non-resident attachment in Chancery against NAACP, *its branches or auxiliary offices* in the State of Mississippi. This relief was sought under Sections 2729 et seq., Mississippi Code, 1942, Annotated, Recompiled (1957), which provide generally for the attachment in Chancery of the effects of a non-resident, absent or absconding debtor in the hands of persons in this state.[2]

---

1. This State suit will be referred to in this opinion as the "State Action".

2. Sections 2729 and 2730, Mississippi Code, 1942, Annotated, Recompiled (1957), provide:

"§ 2729. Non-residents—absent or absconding debtors.

The chancery court shall have jurisdiction of attachment suits based upon demands founded upon any indebtedness, whether the same be legal or equitable, or for the recovery of damages for the breach of any contract, express or implied, or arising ex delicto against any non-resident, absent or absconding debtor, who has lands and tenements within this state, or against any such debtor and persons in this state who have in their hands effects of, or are indebted to, such non-resident, absent or absconding debtor. The court shall give a decree in personam against such non-resident, absent or absconding debtor if summons has been personally served upon him, or if he has entered an appearance.

§ 2730. Attachment against non-residents—how effects or indebtedness bound.

When a bill shall be filed for an attachment of the effects of a non-resident, absent or absconding debtor in the hands of persons in this state, or of the indebtedness of the defendant in this state to such non-resident, absent or absconding debtor, it shall be sufficient to bind such effects or indebtedness, that the summons for the defendant resident in this state shall have stated in or endorsed upon it the nature and object of the suit, and that it is to subject the effects in the hands of the resident defendant, and the indebtedness of such defendant to the non-resident, absent or absconding debtor, to the demand of the complainant; or, instead of such statement on the summons, a copy of the bill may be served with the summons, and shall bind the effects or indebtedness from the time of such service."

One of the defendants in the case sub judice, First National Bank of Clarksdale, (FNBC) and fifty-five other banks in the State of Mississippi were made parties defendant in the State Action, and were said to have funds or effects of NAACP, its branches or auxiliary offices, in their hands which were subject to non-resident attachment in the action. Process was issued and duly served in the state on all defendants including FNBC and the other defendant banks named in the complaint.

The Mississippi State Conference of the National Association For The Advancement Of Colored People (State Conference), an unincorporated association, resident of Mississippi, and the Coahoma County Branch Of The National Association For The Advancement Of Colored People (Coahoma Branch), an unincorporated association, resident of Mississippi and a member of the State Conference, filed a verified complaint in the case sub judice on November 7, 1969. The Bank of Clarksdale, Coahoma National Bank, and FNBC, are named as defendants in the action, and are sued as a class, the members of which are alleged to be all other banks, who were named as defendants in the State Action.

The complaint alleged that the State Conference is an unincorporated association, a resident of Mississippi and the owner of the property situated within the state; that the Coahoma Branch is an unincorporated association, a resident of Mississippi, and the owner of property situated within the state, and that each member of the class is an unincorporated association, a resident of Mississippi and the owner of property situated within the state.

The State Conference and the Coahoma Branch filed the action through Aaron Henry, a resident of Coahoma County, Mississippi, who is president of both the State Conference and the Coahoma Branch. The Coahoma Branch brought the action in the case sub judice for all other local NAACP Branches within the State of Mississippi.

The plaintiffs allege that although they and each member of the class represented by the Coahoma Branch are authorized by NAACP to use the words "National Association For The Advancement Of Colored People" as a part of the title of their respective associations, and have agreed to abide by the constitution of NAACP, they are completely autonomous and independent of NAACP, and that the branches are autonomous and independent of the State Conference.

The plaintiffs also allege in the complaint that they and the members of the class represented by the Coahoma Branch are not defendants to the State Action.

The plaintiffs allege in the complaint that as a result of the State Action the funds of plaintiffs and members of the class represented by plaintiff Coahoma Branch, have been sequestered in the hands of the banks named as defendants in the State Action and thus, such funds are not available for their use in the promotion of the activities in which they are engaged i. e. activities protected by the First Amendment to the Constitution of the United States designed to secure the equal rights of the Negro citizens of the State of Mississippi and the United States.

The plaintiffs allege, inter alia, that the funds aforesaid have been sequestered in an action to which they and the members of the class represented by the Coahoma Branch are not parties, without notice of any kind or an opportunity to be heard; that the attachment has and will in the future cause extraordinary and irreparable injuries to them and the said class; that plaintiffs and the members of said class are seriously hampered in their day to day activities; that prospective members of or contributors to the branches aforesaid have been frightened and deterred from joining or contributing money to the branches; that persons who would otherwise associate to engage in activities

protected by the constitution have been frightened and deterred from engaging in such activities from fear that their property might be attached because of some presumed connection with a non-resident organization; and that the State Action was filed by the complainants therein with such a callous indifference to the rights of others as to amount to malice and bad faith.

Plaintiffs bring the action sub judice pursuant to 42 U.S.C.A. § 1983, the Civil Rights Statute of April 20, 1871, and invoke the jurisdiction of the court under 28 U.S.C.A. §§ 1331 and 1343.

Plaintiffs moved for a temporary restraining order requiring defendant banks to release the funds aforesaid. The Bank of Clarksdale and the Coahoma National Bank answered the action and affirmatively stated that they did not have possession of or control over any funds subject to the attachment process of the State Action. These defendants were dismissed from the action. The FNBC answered, and acknowledged that it had in its possession and under its control certain funds belonging to the Coahoma Branch.

A hearing was held by the Court on plaintiffs' motion for a temporary restraining order at Aberdeen on November 17, 1969. FNBC appeared at the hearing and in the course of the trial, moved ore tenus that the complainants in the State Action be made parties defendant to the action, sub judice, on the ground that such parties claimed an interest in the funds in its possession belonging to the Coahoma Branch, and were, therefore, necessary and proper parties to the pending action.

The Court being of the opinion that the action could not proceed to final judgment without the appearance of the complainants in the State Action, directed that such parties be made parties defendant to the action. Pursuant to the Court's order, plaintiffs caused a summons, together with copies of the complaint, motion for preliminary injunction and temporary restraining order issued by the Court, to be served on each of such State Action, complainants as hereinbefore indicated. The Court entered a temporary restraining order requiring FNBC to release all funds in its possession belonging to plaintiff Coahoma Branch, from the attachment issued in the State Action upon the posting by the plaintiffs of a bond in the aggregate amount of the funds attached, plus the sum of $1,000.00. The order provided for steps to be taken by which funds in the hands of other banks, members of the class represented by FNBC, might be released from the attachment process.

The Court set a hearing on the motion for a preliminary injunction at Oxford, Mississippi on December 1, 1969. A hearing was held at the appointed time. The complainants in the State Action appeared in response to the summons issued and duly served upon them, and filed a motion to dismiss on the grounds that the complaint failed to state a claim upon which relief could be granted and that the Court lacked jurisdiction of the subject matter.

At the conclusion of the hearing the Court announced from the bench his decision to grant the motion for a preliminary injunction and deny the motion to dismiss. The Court requested counsel to prepare an appropriate order. Counsel could not agree on an appropriate order. The Court received proposed orders from counsel for plaintiffs and counsel for defendants, complainants in the State Action. The proposed orders were made a part of the record in the case. The Court entered its own order December 15, 1969, but it was not lodged with the Clerk until December 16, 1969. In the order overruling the motion to dismiss, which was separate from the one ordering the issuance of a preliminary injunction, the Court provided that the said defendants might make application to the Fifth Circuit Court of Appeals for an interlocutory appeal from

the order, pursuant to 28 U.S.C. § 1292 (b). The said defendants made application to the Court of Appeals for the Fifth Circuit for an interlocutory appeal, which was denied on March 4, 1970.[3]

On the day before the Court's orders carrying into effect the decision of the Court, announced at the hearing on December 1, 1969, were lodged with the Clerk, that is on December 15, 1969, NAACP filed herein a motion to intervene as a party plaintiff. Plaintiffs also filed a motion on that day to make MAP a party defendant.

NAACP, State Conference, Coahoma Branch, individually and on behalf of all others similarly situated, and Aaron Henry, individually and on behalf of all others similarly situated, filed an amended complaint which greatly enlarged the scope of the issues in the case. Aaron Henry appeared in the original complaint in his official capacity of President of State Conference and Coahoma Branch, but not as an individual. In the amended complaint he appeared as an individual and as representative of a class consisting of all individuals named as defendants in the State Action.

The amended complaint makes MAP a party defendant and in essence makes a direct attack on the State Action. In the first cause of action in the amended complaint plaintiffs seek a declaratory judgment that plaintiffs and members of the class represented by plaintiffs have First and Fourteenth Amendment rights to peacefully picket, march, demonstrate, distribute leaflets or otherwise publicize and protest their grievances of racial discrimination and denial of equal rights by either the business community or officials of Port Gibson or Claiborne County, to conduct an economic boycott of merchants they believe are acting in a racially discriminatory manner, and to urge others to comply with such boycott. In the first cause of action plain-

tiffs also seek an injunction restraining defendants, complainants in the State Action, from prosecuting the suit.

The second cause of action in the amended complaint seeks a declaratory judgment that Sections 2729–2734, Mississippi Code, 1942, Annotated, Recompiled (1957) are unconstitutional on their face and as applied in the State Action deprive persons subject to attachment thereunder of the due process and equal protection of law guaranteed by the Fourteenth Amendment to the Constitution of the United States. The second cause of action also seeks an injunction against the defendant banks in the case sub judice from detaining in any way the funds of plaintiffs.

The third cause of action in the amended complaint seeks a declaratory judgment that State Conference, Coahoma Branch and the branches represented by Coahoma Branch as a class are residents of the State of Mississippi and are not subject to the provisions of Sections 2729–2734 of the Mississippi Code of 1942, Annotated, Recompiled (1957). Injunctive relief as prayed for under the second cause of action is also sought under the third cause of action.

In the fourth cause of action in the amended complaint plaintiffs seek to have the Court declare unconstitutional Section 2059.3, Mississippi Code of 1942 (1958 Supp.), (Conspiracy-unlawful restraint of trade-civil liability) and restrain defendants, complainants in the State Action, from prosecuting or continuing to prosecute the State Action or other suits against plaintiffs in which recovery is dependent on the validity of Section 2059.3.

The fifth cause of action in the amended complaint seeks a declaratory judgment that Sections 1088 and 1089 of the Mississippi Code of 1942, Annotated, Recompiled (1957) which prohibit certain trusts, combines, or other agreements in restraint of trade when inimi-

3. Claiborne Hardware Co. et al. v. Aaron Henry et al., Misc. No. 1583.

cal to public walfare, cannot constitutionally be applied to restrain First Amendment activities, such as described in the amended complaint. Injunctive relief is sought restraining defendants, complainants in the State Action, from prosecuting or continuing to prosecute the State Action or any other suit against plaintiffs in which it is sought to restrict First Amendment rights on the basis of said Sections 1088 and 1089.

The sixth cause of action set forth in the amended complaint seeks a declaratory judgment that plaintiffs are entitled to a jury trial in the event the State Action proceeds to trial, and an injunction restraining defendants, complainants in the State Action, from bringing the State Action on for trial on the issue of money damages unless plaintiffs are accorded the right to trial by jury.

The amended complaint does not seek a Three-Judge Court to hear the constitutional issues presented in the second and fourth causes of action, since plaintiffs do not seek to restrain the action of any officer of the state, and, as to the constitutional questions presented by the Fifth and Sixth causes of action, plaintiffs do not seek a Three-Judge Court, since they do not seek injunctive relief against any officer of the state, neither do they seek a declaration that the statutes involved in said causes are unconstitutional on their face, but rather the application of the statutes and procedures to this particular case only.

The amended complaint was filed without plaintiffs having first obtained an order from the Court permitting such to be done. The motion to intervene filed by NAACP, sought leave for NAACP to intervene as a plaintiff in the action, in order to assert the claims set forth in the amended complaint submitted with the motion. The motion was bottomed on the ground that the case sub judice seeks, inter alia, an injunction against the State Court proceedings, in which NAACP is a party defendant and in which it has an interest. NAACP also asserted that its claims involve questions of law and facts common to those raised by all the plaintiffs in the action.

The plaintiffs filed, on December 31, 1969, a motion for a preliminary injunction restraining defendants, complainants in the State Action, from further prosecuting said action or causing the same to be prosecuted. Plaintiffs assert as grounds for the motion that such an injunction is necessary to prevent irreparable injury to plaintiffs pending the ultimate determination of the case sub judice; to preserve the status quo of the parties until final determination of the action; to permit the Court to grant full and effective relief in the event plaintiffs ultimately prevail; and to prevent expense and waste in the event that plaintiffs are ultimately successful in the action.

On January 6, 1970, defendants, complainants in the State Action, filed a motion for change of venue to the United States District Court for the Southern District of Mississippi, asserting that such a change is warranted for the convenience of the parties and in the interest of justice.

On January 16, 1970, defendants, complainants in the State Action, noticed the depositions at Clarksdale, Mississippi, January 26—January 30, 1970 of ten individuals, members of the class represented by plaintiff Aaron Henry.

On January 22, 1970 plaintiffs noticed the depositions of six of the defendants, complainants in the State Action, at Clarksdale, Mississippi on February 2, 1970.

On January 28, 1970 defendants, complainants in the State Action, filed a motion to strike the amended complaint and dismiss the action. The basis of the motion is the alleged refusal of the ten individuals noticed for depositions, as aforesaid, to appear for the deposition. There is attached to the motion copy of letter written by plaintiffs' counsel in which the position was taken that the

named individuals, though members of the class represented by plaintiff Henry in the suit, were not themselves parties for the purpose of discovery under the Federal Rules, but rather witnesses, who must be dealt with as such. Counsel insisted that to secure the attendance of the individuals at the deposition, they were entitled to the service of subpoenas and payment of fees and mileage, pursuant to the provisions of Rule 45, Federal Rules of Civil Procedure.

There is attached to the motion a copy of a stipulation filed in the case in which it is agreed that notice of the taking of the depositions was duly served on counsel for plaintiffs; that defendants had not personally served the said individuals with subpoenas or other notice of the taking of the depositions, nor had they tendered witness fees or mileage to said individuals; that should the individuals appear for the depositions defendants would not serve subpoenas upon them, nor tender witness fees or mileage; and that plaintiffs' attorneys would not cause the persons named in the notice of the depositions to appear at the time and place indicated.

On January 28, 1970 defendants filed a motion to stay taking of depositions of defendants by plaintiffs until defendants completed depositions on oral examination of plaintiffs and witnesses. The Court entered an order on this motion on February 5, 1970, staying the taking of depositions by all parties until further orders of the Court.

All outstanding motions were heard by the Court at Oxford, Mississippi on February 26, 1970, at which time the Court took all motions under advisement and requested additional briefs.

The Court has now received and considered elaborate, excellent, exhaustive and extensive briefs from the parties in support of all motions, and has carefully studied and reviewed the entire record in the case.

## THE AMENDED COMPLAINT
## THE MOTION TO INTERVENE
## THE MOTION TO ADD PARTY DEFENDANT

At the threshold the Court must determine whether to recognize the amended complaint filed by original plaintiffs, NAACP, and Aaron Henry, individually, and as the representative of a class composed of all individual defendants in the state action. On this issue rests the determination of many questions here involved.

Defendants [4] question the appropriateness of the Court's action ordering them to be made parties defendant herein on the ore tenus motion of FNBC at the initial hearing in this case.

As hereinbefore mentioned, the Court's action was prompted by the assertion by FNBC that the Court could not finally determine the issues involved and render complete relief between those already made parties without the presence of defendants. Defendants claim an interest in the deposits of Coahoma Branch with FNBC to the extent that the money represented thereby may be subjected to the demand of defendants in the state action. FNBC is a mere stakeholder and has no interest in the outcome of the litigation. It is apparent that the Court would be powerless to finally dispose of the case without the presence of defendants, who, by virtue of their claims against the funds mentioned, are indispensable parties. The Court is of the opinion that the Court's action in this regard was proper.

Defendants allege in the State Action that the original plaintiffs herein are branches of NAACP, the nonresident defendant. Thus, one of the issues involved in the case sub judice, is the re-

4. The defendants, complainants in the State Action, will be referred to in the remainder of this opinion as "defendants".

lationship of the original plaintiffs to NAACP.

Another issue tendered by the original complaint is the contention of the original plaintiffs that the State Action infringes upon their First Amendment Rights.

The amended complaint was filed after defendants appeared in the action pursuant to process served upon them, but before they answered the complaint. At the time the amended complaint was filed FNBC had answered, but gave its consent to the filing of the amended complaint.

■ Under these circumstances the original plaintiffs were entitled to file the amended complaint as a matter of right without an order of the Court, with the exception that the original plaintiffs could not effectively add parties to the action without the Court's permission.[5]

The original plaintiffs named NAACP as a party plaintiff and MAP as a party defendant in the amended complaint in order to avoid further amendment should the Court sustain their motion to add MAP as a party defendant and NAACP's motion to intervene.

NAACP seeks to intervene pursuant to the provisions of Rule 24(a) (2) of Federal Rules of Civil Procedure, which provide for intervention of right "when the applicant claims an interest relating to the property or transaction which is the subject of the action and is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties", and Rule 24(b) (2) which provides for permissive intervention "when an applicant's claim or defense and the main action have a question of law or fact in common".

The motion of NAACP to intervene is bottomed on the contention that it is a defendant in the State Action, against which an injunction is sought in the action sub judice, and therefore has an interest relating to the subject matter of the action, and that its claims involve questions of law and fact common to those raised herein by the original plaintiffs.

■ It is clear to the Court that NAACP cannot intervene herein as a matter of right. While NAACP claims an interest relating to the transaction which is the subject of the action sub judice, it does not claim that its interest is not adequately represented by the existing parties. Both of these elements are necessary when the intervention is sought as a matter of right.[6] Rule 24 (a) (2) F.R.Civ.P.

5. Rule 15(a) Federal Rules of Civil Procedure provides "A party may amend his pleading once as a matter of course at any time before a responsive pleading is served * * *."

It is held in Moore's Federal Practice, Second Edition, Vol. 3, page 851, § 15.07 (2):

"The term 'a responsive pleading' as used in Rule 15(a) should be interpreted by reference to Rule 7(a), which defines 'pleadings' as including only the complaint, the answer, the reply, the answer to a cross-claim, and the third-party complaint and answer. So it has been held that a motion to dismiss for failure to state a claim is not a 'responsive pleading' within the meaning of Rule 15, and pleadings may be amended after such motions are made."

As to adding parties, Moore's holds at page 858, in Vol. 3, as follows:

"Rule 21 governs the procedure for dropping or adding parties, and requires an order of the court. Consequently a party may not be added by amendment of the complaint as of course."

See also International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America. v. AFL–CIO, (E.D.Mich.1963) 32 F.R.D. 441, which holds that an amendment to complaint to add or drop a party requires an order of the court under Rule 21, which controls and limits Rule 15(a).

6. In Atlantis Development Corporation v. United States, 5 Cir. 1967, 379 F.2d 818, at page 825, the court said:
"Of course F.R.Civ.P. 24(a) (2) requires both the existence of an interest which

Since NAACP does not claim that the original parties will not adequately represent its interest in the case, intervention cannot be allowed as a matter of right.

If NAACP is permitted to intervene, such must be done under the provisions of Rule 24(b) (2) of F.R.Civ.P.

It is at once apparent that NAACP's claims and the main action herein have questions of law and fact in common.

The general purpose of the Rules of Federal Procedure is that they "shall be construed to secure the just, speedy, and inexpensive determination of every action." F.R.Civ.P.Rule 1.

The Court is of the opinion that the disposition of the case sub judice may as a practical matter impair or impede the ability of NAACP to protect the interest which it claims in the subject matter of the action. In a very real and practical sense the trial of this action is the trial of NAACP's suit as well.

██ While the decision in the case sub judice will not constitute res judicata or be binding as a matter of law on NAACP, if its motion to intervene is denied, for all practical purposes, the decision will, as a matter of stare decisis, control the trial of the issues in a subsequent separate action by NAACP.

The Court's decision in this case will more than likely be appealed to Circuit Court of Appeals, and the decision of that Court on the issues involved herein will surely control the disposition of similar or the same issues in a subsequent separate action between NAACP and defendants.

The Fifth Circuit, in discussing its adherence to the stare decisis doctrine said in *Atlantis*, Note 6, supra:

"It also assumes that in the subsequent separate trial of the claim of Atlantis against the Government the

may be impaired as a practical matter and an absence of adequate representation of the intervenor's interest by ex-

prior decision would be followed as a matter of stare decisis. Do these assumptions have a realistic basis? Anyone familiar with the history of the Fifth Circuit could have but a single answer to that query. This Court, unlike some of our sister Circuit Courts who occasionally follow a different course, has long tried earnestly to follow the practice in which a decision announced by one panel of the Court is followed by all others until such time as it is reversed, either outright or by intervening decisions of the Supreme Court, or by the Court itself en banc. That means that if the defendants in the main action do not prevail upon these basic contentions which are part and parcel of the claim of Atlantis, the only way by which Atlantis can win is to secure a rehearing en banc with a successful overruling of the prior decision or, failing in either one or both of those efforts, a reversal of the earlier decision by the Supreme Court on certiorari. With the necessarily limited number of en banc hearings in this Circuit and with the small percentage of cases meriting certiorari, it is an understatement to characterize these prospects as formidable."

* * *

We are dealing here with a conjunction of a claim to and interest in the very property and the very transaction which is the subject of the main action. When those coincide, the Court before whom the potential parties in the second suit must come must itself take the intellectually straight forward, realistic view that the first decision will in all likelihood be the second and the third and the last one. Even the possibility that the decision might be overturned by en banc ruling or reversal on certiorari does not overcome its practical effect, not just as

isting parties. There can be no difficulty here about the lack of representation."

an obstacle, but as the forerunner of the actual outcome. In the face of that, it is 'as a practical matter' a certainty that an absent party seeking a right to enter the fray to advance his interest against all or some of the parties as to matters upon which he is for all practical purposes shortly to be foreclosed knows the disposition in his absence will 'impair or impede his ability to protect that i n t e r e s t, * * *.' F.R.Civ.P. 24(a) (2)." [7]

In Moore's Federal Practice, Second Edition, Vol. 4, pages 59, 60, § 24.10, the author says: "The grant of intervention in many of the discretionary cases will facilitate the disposal in one action of claims involving common questions of law or fact, and thus avoid both court congestion and undue delay and expense to all parties. * * * The most obvious case of permissive intervention, of course, is the situation where an intervenor has a claim against the defendant similar to or identical with that asserted by the plaintiff."

In the case sub judice, aside from the original plaintiffs' claim that they are not subject to non-resident chancery attachment, because of Mississippi citizenship, the claims of NAACP are similar to or identical with those asserted by the original plaintiffs.

Rule 24(b) (2), F.R.Civ.P., provides: "In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." There is nothing present in the action sub judice which tends to show that the intervention of NAACP will unduly delay or prejudice the adjudication of the rights of the original parties.

 The Court is of the opinion that permitting NAACP to intervene in the case sub judice, will avoid undue delay and expense to all parties.

In support of their motion to add MAP as a party defendant it is shown that MAP is a party defendant in the State Action. The same reasons that motivated the Court to permit NAACP to intervene apply to the motion to make MAP a party defendant. Rule 19(a) F.R.Civ. P. provides "A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest * * * If he has not been so joined, the court shall order that he be made a party."

Rule 21, F.R.Civ.P. provides "Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just."

 The Court is of the opinion that the motion of plaintiffs to make MAP a party defendant to this action is well taken and should be sustained.

It follows, as a matter of course, after permitting the intervention of NAACP, and directing that MAP be made a party defendant, that the Court should permit the filing of the amended complaint.

## MOTION TO DISMISS

Defendants move the Court to dismiss the amended complaint on four grounds.

The first ground reasserts by reference the grounds set forth in the motion to dismiss the original complaint. The Court has previously overruled defendants' motion to dismiss the original complaint. The motion to dismiss the amended complaint for the reasons set forth in the prior motion does not present new or additional principles of law. The motion does not appear to be well taken

7. 379 F.2d 828, 829.

on the first of the four grounds asserted by defendants.

■ The second ground asserts that the original complaint cannot be amended while the case is pending on appeal in the Court of Appeals from the Court's order of December 15, 1969, overruling defendants' motion to dismiss for failure of the complaint to state a cause of action. This question is now moot for the reason that on March 4, 1970, the Circuit Court of Appeals, refused to entertain the interlocutory appeal.

■ The third ground for the motion alleges that the attempted action on the part of the plaintiffs is in contravention of 28 U.S.C. § 2283. The Court is of the opinion that this section is not applicable in the case sub judice.

The fourth ground is in effect, a motion to strike, and, in the opinion of the Court is not well taken.

It is the Court's judgment that the motion to dismiss is not well taken and should be overruled.

## MOTION TO STRIKE COMPLAINT AND DISMISS ACTION

Defendants move the Court to strike the amended complaint and dismiss the action. In support of the motion defendants aver that they noticed the depositions of the individuals described in the amended complaint, as members of the class represented by plaintiff Aaron Henry, and that they willfully refused to appear at the time and place indicated and submit to the depositions. Defendants' motion is directed to the amended complaint in its entirety and does not seek to dismiss the same only as to the said individuals. Defendants argue that the individuals occupy the status of named plaintiffs and are subject to sanctions by the Court for failure to appear and submit to discovery depositions, without being subpoenaed as witnesses.

The plaintiffs contend that the individuals are members of a class represented by an individual plaintiff, Aaron Henry, and do not have the status of named plaintiffs so as to subject them to the discovery rules.[8]

■ Initially it is noticed that the motion to dismiss is general, and seeks dismissal, not only as to said individuals, but also as to the other plaintiffs who are not charged with failure to respond to discovery procedures. The willful failure of the eight individuals to appear for the deposition could not in any view of the matter justify the dismissal as to other plaintiffs. In the case of Demenlenaere v. Rockwell Mfg. Co., D.C. N.Y. 1959, 23 F.R.D. 686, the Court held that the failure of five of eight plaintiffs to appear for taking of their depositions would not justify dismissal as to all eight.

The Court has not determined that the action sub judice can be maintained as a class action on behalf of the individual defendants in the State Action. Rule 23(c) (1) F.R.Civ.P. provides "As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained".

It is clear, therefore, that at this stage of the case, the individuals aforesaid are not parties to the action in any sense of the word. They are not named plaintiffs, and the Court has not determined by order that the action may be main-

---

8. Rule 37(d) F.R.Civ.P. provides:.
 "Failure of Party to Attend or Serve Answers. If a party or an officer or managing agent of a party wilfully fails to appear before the officer who is to take his deposition, after being served with a proper notice, or fails to serve answers to interrogatories submitted un-

der Rule 33, after proper service of such interrogatories, the court on motion and notice may strike out all or any part of any pleading of that party, or dismiss the action or proceeding or any part thereof, or enter a judgment by default against that party."

tained as a class action for their benefit.

The Court is of the opinion that the motion to strike complaint and dismiss action is not well taken and should be overruled.

The Court has considered but declines to act at this time on the question of whether the said individuals, as members of a class, should be considered in the same category as named plaintiffs for discovery purposes. In the present posture of the case a decision of the question is not necessary.

MOTION TO STAY TAKING OF DEP-
OSITIONS OF DEFENDANTS
UNTIL DEFENDANTS HAVE
COMPLETED DEPOSITIONS ON
ORAL EXAMINATION OF
PLAINTIFFS AND WITNESSES

When this motion to stay was filed the Court was of the opinion that the posture of the case was such that the taking of depositions on oral examination should be stayed until further orders of the Court, accordingly such an order was entered.

The position of defendants is that once they start taking depositions of the parties and other witnesses, they are entitled to proceed until they have concluded the examination of all parties and any other person known to have information concerning the issues involved in the litigation, and during this period the plaintiffs should not be entitled to proceed with discovery depositions in their behalf.

This seems to the Court as an impracticable position. Defendants might not conclude their discovery before trial. There is no known legal standard by which plaintiffs could determine when defendants conclude the taking of depositions, except to inquire of defendants. In such a situation plaintiffs would be at the mercy of defendants.

The record shows that defendants noticed the taking of depositions of the

individuals above mentioned on January 16, 1970. Plaintiffs noticed the depositions of certain defendants on January 26, 1970. Defendants contend that having given notice of the taking of depositions first, they are entitled to proceed not only with the taking of the depositions of the individuals designated in the notice, but of all other persons whom they desire to depose. Such a procedure would produce absurd results.

The Court is of the opinion that the correct, proper and reasonable rule is stated in Moore's Federal Procedure, Second Edition, Vol. 4, § 26.13(2) page 1151. Professor Moore states: "Also the party having priority is entitled to complete the taking of depositions *noticed* by him before the adversary party is permitted to institute discovery proceedings—depositions, interrogatories, or production of documents—of his own". (Emphasis supplied)

In the case sub judice defendants noticed the depositions of ten individuals at Clarksdale, Mississippi to begin on January 26, 1970, and to end on January 30, 1970. The notice was served on counsel for plaintiffs on January 16, 1970.

Plaintiffs noticed the deposition of six defendants for Clarksdale, Mississippi on February 2, 1970. The notice was served on January 20, 1970.

Thus, plaintiffs recognized the priority of defendants' depositions during the period of January 26, 1970 and January 30, 1970. This was all that plaintiffs were required to do under the priority rule. Defendants' priority extended only to the depositions already noticed by them.

The motion to stay depositions is not well taken and should be overruled. The parties should be left free to pursue discovery procedure as they desire, subject, of course, to compliance with the Federal Rules and principles of law applicable thereto.

## MOTION FOR PRELIMINARY INJUNCTION

Plaintiffs contend that the Court should preliminarily enjoin defendants from prosecuting the State Action because the trial of that action, while the case sub judice is pending, will effectively deprive plaintiffs of the opportunity of obtaining full and adequate relief in the case sub judice.

Plaintiffs support their motion with the contention (1) that the Court has jurisdiction of the action; (2) that plaintiffs' constitutional rights, particularly First Amendment rights, will be infringed by the State Action while this suit is pending; (3) that fundamental equitable considerations show that preliminary injunctive relief is appropriate, and (3) that 28 U.S.C.A. § 2283 does not bar issuance of a preliminary injunction.

The parties have submitted elaborate and extensive briefs in support of their respective positions on this motion. The Court has given careful consideration to all points urged upon the Court.

The thrust of this action is the claim by plaintiffs that their First Amendment rights have been infringed by defendants by the utilization of the machinery of the state courts. This, plaintiff contends, satisfies the color of state law requirement.

Section 1331(a), Title 28 U.S.C.A. provides: "The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000.00, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States".

Section 1343(3) Title 28 U.S.C.A. provides that the district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person: "To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States".

Section 1983, Title 42 U.S.C.A. provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

It was held by the Supreme Court in Shelley v. Kraemer, 1948, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 that the action of state courts and of judicial officers in their official capacities, even though taken for the enforcement of private agreements, is state action within the provisions of the Fourteenth Amendment that no state shall deny to any person within its jurisdiction the equal protection of the laws.

In Edward v. Habib, 1968, 130 U.S. App.D.C. 126, 397 F.2d 687, 694, the court said:

"A state court judgment, then, even by adjudicating private lawsuits, may unconstitutionally abridge the right of free speech as well as the right to equal protection of the laws."

In New York Times Co. v. Sullivan, 1964, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed. 2d 686, 697, 95 A.L.R.2d 1412, the Supreme Court said:

"We may dispose at the outset of two grounds asserted to insulate the judgment of the Alabama courts from constitutional scrutiny. The first is the proposition relied on by the State Supreme Court—that 'The Fourteenth Amendment is directed against State action and not private action.' That proposition has no application to this

case. Although this is a civil lawsuit between private parties, the Alabama courts have applied a state rule of law which petitioners claim to impose invalid restrictions on their constitutional freedoms of speech and press. It matters not that that law has been applied in a civil action and that it is common law only, though supplemented by statute. See e.g., Alabama Code, Tit. 7, §§ 908–917. The test is not the form in which state power has been applied but, whatever the form, whether such power has in fact been exercised."

The Court is of the opinion that the amended complaint herein states a cause of action cognizable by the Court under 28 U.S.C.A. §§ 1331(a), 1343(3) and 42 U.S.C.A. § 1983.

Defendants charge in the State Action that plaintiffs conspired each with the other, to ruin and cause injury to the businesses of the defendants without any purpose of protecting or advancing any legitimate interest of their own. In carrying out this unlawful conspiracy, defendants charge that plaintiffs daily committed malicious, illegal and unlawful acts of injurious falsehoods, deception, force, intimidation, threats, coercion and violence against the customers and prospective customers of defendants. Defendants charge plaintiffs with a secondary boycott of their businesses, maliciously contrived and executed, by coercing the customers and prospective customers of defendants, against their will, to withdraw and withhold their beneficial business intercourse from defendants, by the infliction or threat of physical injury to said customers and prospective customers, and by such intimidation as to place such customers and prospective customers in fear of injury and bodily harm.

The defendants also charge plaintiffs with massive picketing of their places of business; making public speeches against trading with defendants; stationing guards near their businesses to physically stop customers and prospective customers from entering the business premises of defendants and to threaten those who traded with defendants with physical violence; and with many other acts of violence or threatened violence toward customers and prospective customers of defendants, should they trade with defendants.

In sum, defendants charge plaintiffs with carrying into effect a boycott of their businesses, and forcing others to do the same, through picketing, speaking, violence and threats of violence.

As the result of the alleged conduct of plaintiffs, it is charged tha defendants suffered large losses in the operation of their businesses for which they seek recovery against plaintiffs in a sum aggregating $3,542,466.04.

Defendants also charge plaintiffs with tortious interference with the rights of defendants to pursue their lawful trades and businesses and the violation of certain statutes of the State of Mississippi relative to restraint of trade. Defendants seek to restrain plaintiffs from picketing and boycotting their businesses and from violating certain Mississippi Statutes relative to restraint of trade.[9]

Defendants prayed for and obtained a non-resident Chancery attachment [10] of the funds of plaintiffs in fifty-six banks in Mississippi.

Plaintiffs contend that their activities consisted of picketing and boycotting and encouraging others to picket and boycott the businesses of defendants in protest of racial discrimination which had been and was being practiced by defendants in the operation of their busi-

---

**9.** Mississippi Statutes which defendants claim were violated by plaintiffs include §§ 1088, 1089 and 1092, Mississippi Code 1942, Annotated, Recompiled.

**10.** Id. § 2729 et seq.

nesses, and by the officials of the city in which defendants operated their businesses. Plaintiffs contend that their activities are constitutionally protected by the first amendment, and that, as citizens of the United States, they have the right of the free expression of their views.

The State Action, plaintiffs contend, has a chilling effect upon their activities against which they are entitled to relief in this Court. Plaintiffs seek a preliminary injunction to protect their asserted rights until the case can be tried on its merits.

At the hearing on the motion for a preliminary injunction the Court accepted a copy of the sworn bill of complaint filed in the State Action in lieu of affidavits. This document sets forth the facts as have been hereinbefore enumerated.

The plaintiffs submitted the affidavits of eleven individuals, defendants in the State Action. The affidavits are similar. In substance the affidavits relate that the affiants have boycotted the places of business of the defendants, but have not threatened anyone else in regard thereto, nor have they been threatened in the matter; that they have no knowledge of violence or threats of violence to any other party; and that they have engaged in and encourage the boycott to support grievances which they feel are justified that those involved have discriminated and are discriminating against members of the Negro race.

The question presented to the Court on the motion for a preliminary injunction is whether the facts as shown by the sworn bill of complaint filed in the State Court and the affidavits filed herein by plaintiffs present a case where the Court should exercise its injunctive power to maintain the status quo of the parties until the case can be heard on its merits.

There is little doubt but that the right of plaintiffs to peacefully picket and boycott the businesses of defendants and urge others to do so, is a right which they can enjoy, guaranteed to them by the first amendment. Amalgamated Food Employees Union, Union Local 590 v. Logan Valley Plaza, Inc., 1968, 391 U.S. 308, 88 S.Ct. 1601, 20 L.Ed.2d 603; Thornhill v. Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093; Kelly v. Page, 5 Cir. 1964, 335 F.2d 114. The court said in *Kelly*, at page 119, as follows:

"Peaceful picketing for the object of eliminating racial discrimination in department stores open to the general public is a right embraced in free speech under the First Amendment to the Constitution, and made applicable to the states by the Fourteenth Amendment."

On the other side of the coin violence or threats of violence have no protection under the cloak of First Amendment Rights. In Smith v. Grady, 5 Cir. 1969, 411 F.2d 181, 188, 189, Judge Coleman speaking for the Fifth Circuit said:

"This Court recognizes, as do all courts, that First Amendment rights are zealously to be protected. In fact, the decision of this case turns chiefly on conduct, rather than speech. Of course, we take into consideration epithets addressed to customers and language which in all reason must be considered as insulting or threatening. At the same time, we are convinced that if peaceful picketing is allowable, as, for instance, not in the furtherance of an unlawful purpose, then a command of absolute silence is constitutionally impermissible.

\* \* \* \* \* \*

On a picket line, however, and particularly in the support of a boycott of a lawful business, the Constitution affords no protection to speech which is violent, threatening, menacing, insulting, or clearly calculated to provoke a breach of the peace by others."

The defendants contend, however, that 28 U.S.C.A. § 2283 bars the prosecution of this action wherein the plaintiffs seek

an injunction against the prosecution of a State Action.

It is provided in 28 U.S.C.A. § 2283 that "A court of the United States may not grant an injunction to stay proceedings in a State Court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments".

This section of the Code has been the subject of much litigation in recent years, and many decisions have been rendered by appellate and district courts in the nation discussing the applicability of the statute and its scope.

However, the Court need not go further than the Fifth Circuit to dispose of this issue. In the case of Machesky v. Bizzell, 5 Cir. 1969, 414 F.2d 283, the court considered an action arising in the Northern District of Mississippi wherein plaintiffs sought injunctive relief against the enforcement of an injunction issued by the State Chancery Court. The Fifth Circuit, speaking through Judge Bell, said:

"Our decision is grounded on the premise that § 2283 is non-jurisdictional in that it is no more than a statutory enactment of the principle of comity for application in the relationship between federal and state courts. As such, it is to give way in those extra-ordinary cases where the federal injunction is necessary to vindicate clear First Amendment rights. The question, on this premise, becomes whether appellants alleged such a case." [11]

"We hold that the state court injunction here is unconstitutionally overbroad in that it lumps the protected with the unprotected in such a way as to abridge important public interests in the full dissemination of public expression on public issues. We hold

also that where important public rights to full dissemination of expression on public issues are abridged by state court proceedings, the principles of comity embodied in § 2283 must yield, and that the district court is empowered to enjoin the state court proceedings to the extent that they violate these First Amendment rights." [12]

The Court is of the opinion that the Court is empowered to enjoin the State Action, if the facts of the case justify it, to the extent that such State Action may violate the First Amendment rights of plaintiffs, as hereinbefore discussed.

█ The recital of the issues drawn in the State Action, hereinbefore contained, indicates to the Court that plaintiffs can legitimately claim that defendants seek to infringe upon their First Amendment rights, and the prosecution of the State Action will have a chilling effect upon the exercise of those rights. This appears to be a proper case for the issuance of a preliminary injunction to hold the matters in status quo until the rights of the parties can be ascertained. Otherwise, plaintiffs will suffer irreparable injury on account of loss of First Amendment rights pending a solution of the differences between the parties.

█ The Court does not intend to and does not hold that plaintiffs may not be held to accountability in the State Action for any conduct which is not protected by the first amendment, such as violent, threatening, menacing or insulting conduct, or such as is clearly calculated to provoke a breach of the peace by others.

## MOTION FOR CHANGE OF VENUE

Defendants filed a motion for change of venue to the Southern District of Mississippi, asserting in essence that the convenience of the parties and witnesses justified and required such a change.[13]

11. 414 F.2d 287.

12. 414 F.2d 291.

13. The motion is apparently based on 28 U.S.C.A. § 1404(a) which provides:
 "For the convenience of parties and witnesses, in the interest of justice, a dis-

It is not controverted that practically all of the parties who may be affected by the outcome of this litigation, with the exception of the defendant banks, reside in the Southern rather than the Northern District of Mississippi. The scene of the action giving rise to the controversy between the parties is Port Gibson, Claiborne County, Mississippi. Port Gibson is situated in the Northern part of the Western Division (Vicksburg) of the Southern District of Mississippi. The Greenville Division of this Court is 115 miles and the Delta Division when the case sub judice is docketed, 185 miles from Vicksburg.

While the Vicksburg Division of the Southern District of Mississippi would be a more convenient forum for the parties and their solicitors, the trial of the case either at Greenville or Clarksdale would not, in the opinion of the Court, create a great or excessive burden on the parties. Counsel for all parties in the case participate frequently in litigation before this Court at all of its division points.

Section 1404(a), Title 28 U.S.C.A., provides that "for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought". Plaintiffs contend that they could not bring this action in the Southern District of Mississippi for the reason that the three original defendants are citizens of the Northern District of Mississippi. In support of their contention, plaintiffs cite the case of Hoffman v. Blaski, 1960, 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254, in which the court said:[14]

"A defendant, properly served with process by a court having subject matter jurisdiction, waives venue by failing seasonably to assert it, or even simply by making default. * * * But the power of a District Court under § 1404(a) to transfer an action to another district is made to depend not upon the wish or waiver of the defendant but, rather, upon whether the transferee district was one in which the action 'might have been brought' by the plaintiff."

Plaintiffs brought this action against three banks as representatives of a class of banks holding funds of plaintiffs, some of whom are residents of the Southern District of Mississippi. Plaintiffs contend that, for venue purposes, the residences of individual members of the class do not control, but only the residences of the named plaintiffs. Wright, Class Actions, 47 F.R.D. 169, 182 (1969). This argument does not impress the Court for the reason that plaintiffs could have selected a bank residing in the Southern District of Mississippi as the representative of the class against which to bring the suit. Thus, plaintiffs might have brought the suit in the Southern District of Mississippi.

Additionally, plaintiffs might have brought the suit in the Southern District of Mississippi because the claim arose in that district. Section 1391(b) Title 28 U.S.C.A. provides, "A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law". It must be conceded that this claim arose in the Southern District of Mississippi. The transaction giving rise to the suit occurred in Port Gibson, Claiborne County, Mississippi. The State Action which precipitated this action was filed in the Chancery Court, First Judicial District, Hinds County, Mississippi, in the Southern District. Hence, the claim arose in the Southern District and the suit could have been brought in that district by virtue of Section 1391(b), supra.

trict court may transfer any civil action to any other district or division where it might have been brought."

14. 363 U.S. 343, 80 S.Ct. 1089, 4 L.Ed.2d 1262.

The Court is of the opinion that Section 1404(a) supra, authorizes the transfer of this action to the Southern District of Mississippi, should the Court find that a transfer for the convenience of the parties and witnesses, or the interest of justice requires such that a change of venue be granted.

 Whether a change of venue should be ordered is a matter largely within the discretion of the Court. Philip Carey Mfg. Co. et al. v. Taylor, 6 Cir. 1961, 286 F.2d 782, certiorari denied, 366 U.S. 948, 81 S.Ct. 1903, 6 L. Ed.2d 1242. Convenience of the parties will not alone justify a change of venue. The Court must be satisfied that a venue change will also be in the interest of justice.

The case sub judice was filed November 7, 1969. Defendants were made parties to the suit by order of the Court entered on November 17, 1969. Process was served on defendants on or about November 19, 1969. Defendants filed a motion to dismiss the action on December 1, 1969. This motion was overruled by the Court on December 15, 1969, and defendants were permitted to apply to the Circuit Court of Appeals for the Fifth Circuit for an interlocutory appeal. This was denied on March 4, 1969.

On December 15, 1969, plaintiffs filed a motion to add MAP as a party defendant in the action, NAACP filed a motion to intervene as party plaintiff, and plaintiffs filed an amended complaint. In the meantime the Court entered a restraining order and a preliminary injunction against one of the original defendants, and members of the class represented by such defendant, directing the release of funds attached at the instance of defendants in their suit in the state court.

On December 30, 1969, defendants moved to dismiss the amended complaint, and on December 31, 1969, plaintiffs moved for a preliminary injunction to enjoin the prosecution of the State Action.

The motion for a change of venue was filed on January 6, 1970. Subsequent to the filing of the motion, the parties noticed discovery depositions, and thereafter defendants filed a motion to stay discovery depositions by plaintiffs and a motion to strike the amended complaint and dismiss the action, because of the failure of certain individuals, said by defendants to be parties to the action, to appear for depositions, when noticed to do so.

A hearing was held by the Court on all motions filed in the case on February 26, 1970, at which time affidavits and a copy of the sworn complaint filed by defendants in the State Action were filed with and considered by the Court on the motion for a preliminary injunction. The motions were argued before the Court and extensive and exhaustive briefs have been prepared by counsel and submitted to the Court for its consideration.

 To grant a change of venue in the present posture of the case, in the opinion of the Court, would entail unnecessary expense and result in the waste of time on the part of all parties concerned. It does not appear, at this stage of the case, that the interest of justice will be served by the granting of the motion for a change of venue.

The motion for a change of venue will be overruled. The Court, however, reserves the right to give further consideration to the question as the case advances toward the trial date.

An appropriate order in line with the Court's holding will be entered in the case.