Vasco A. SMITH, Jr., Plaintiff-Appellee,

v.

HOLIDAY INNS OF AMERICA, INC.,
and James Dew, Defendants-
Appellants.

No. 15580.

United States Court of Appeals
Sixth Circuit.

Sept. 22, 1964.

William Waller, Jr., Nashville, Tenn.
(John Dunlap, Memphis, Tenn., on the
brief; Waller, Lansden & Dortch, Nash-
ville, Tenn., of counsel), for appellants.

Jack Greenberg, New York City (Avon
N. Williams, Jr., Z. Alexander Looby,
Nashville, Tenn., A. W. Willis, Jr., Mem-
phis, Tenn., Constance Baker Motley,
Frank H. Heffron, New York City, on the
brief), for appellee.

Before MILLER, CECIL and
EDWARDS, Circuit Judges.

EDWARDS, Circuit Judge.

This is an appeal brought by the de-
fendants, Holiday Inns of America, Inc.,
and James Dew, the manager of the Holi-
day Inn-Capitol Hill motel located on
James Robertson Parkway, Nashville,
Tennessee. Appeal is taken from a judg-
ment entered by Judge William E. Miller
after a trial in the United States Dis-
trict Court for the Middle District of
Tennessee.

The principal terms of the judgment go
far toward outlining the nature of the
case:

"1. This is a proper class action,
of which this Court has jurisdic-
tion under 28 U.S.C. Section 1343
(3), 42 U.S.C. Sections 1981, 1982,
and 1983, brought by the plaintiff
on behalf of himself and all other
Negroes who are similarly situated,
for declaratory and injunctive relief
as alleged in the complaint, and the
plaintiff is entitled to the relief
sought by the complaint.

"2. The defendants, Holiday Inns
of America, Inc., and James Dew,
Manager of Holiday Inn-Capitol Hill,
are required by the Fifth and Four-
teenth Amendments to the Consti-
tution of the United States to offer
lodging, dining, recreational and all
other accommodations available at
Holiday Inn-Capitol Hill to plaintiff
and other Negroes on the same
terms and conditions as are appli-
cable to white persons.

"3. The defendants, Holiday
Inns of America, Inc., and James
Dew, Manager of Holiday Inn-Capi-
tol Hill, and each of them, their
agents, employees and successors
and all persons in active concert and

participation with them, are permanently enjoined from denying to plaintiff or other Negroes similarly situated the right to purchase and enjoy all accommodations offered at Holiday Inn-Capitol Hill upon the same terms and conditions as are applicable to white persons."

On appeal no material issues of fact are presented. Appellants appear to concede that the plaintiff was denied accommodations at the Holiday Inn-Capitol Hill motel, where to quote appellants' brief: "James Dew, as * * * manager, followed a policy of refusing to accept Negroes as guests. * * *"

It is appellants' contention that the discrimination thus practiced was purely private in nature and not the product of any sort of state action; and that such discrimination was not barred by any federal constitutional provision or federal law.

The trial judge weighed the facts of this case as developed before him against the standard of interpretation of the Fourteenth Amendment laid down in Burton v. Wilmington Parking Authority, 365 U.S. 715, 722, 81 S.Ct. 856, 860, 6 L.Ed.2d 45 (1961): "[P]rivate conduct abridging individual rights does no violence to the Equal Protection Clause unless to some significant extent the State in any of its manifestations has been found to have become involved in it." He found "Extensive involvement by the state, in many and varied forms and through various agencies * * *."

On appeal the appellants attack this finding as both unsupported by the record and inadequate to support the judgment, since the trial judge did not define the "right" of plaintiff which was violated or properly establish the jurisdiction of the court to grant the relief which was ordered.

Since this appeal was argued to this court, the United States Congress has passed, and the President has signed the Civil Rights Act of 1964,[1] the terms of which (if sustained against constitutional test) would plainly render defendants' policy of racial exclusion illegal. This court has deliberately withheld decision of this appeal, recognizing that voluntary compliance of defendants with the statute referred to would render this appeal moot. No suggestion of mootness having been filed, we proceed to consideration and decision of the issues as presented. They require a recitation of facts extending over many years.

Prior to 1950, the State Capitol of Tennessee was located in the midst of an old and unsightly residential area. In that year the Nashville City Council authorized a contract between the City of Nashville and the Nashville Housing Authority wherein the city agreed to participate in a large-scale urban redevelopment program in which city, state, and federal funds would be employed to condemn, tear down, replan and redevelop through private and public agencies 72 acres of the blighted area surrounding the State Capitol. The project was designated the Capitol Hill Redevelopment Project.

In 1952 in pursuance of this plan the Nashville City Council held a public hearing and then adopted a resolution finding that the slum and blighting conditions existing in the Capitol Hill area were detrimental to the safety, health, morals and welfare of the city, and that these conditions should be eliminated. The resolution also approved the Redevelopment Plan as submitted.

In the same year the Nashville Housing Authority also approved the Redevelopment Plan and subsequently entered into a Loan and Grant Contract with the Housing and Home Finance Agency of the United States, whereby the United States undertook to furnish two-thirds of the cost of the project in the form of loans and grants provided by Title I of the Housing Act of 1949.[2]

The Nashville Housing Authority was and is a public agency created under the

---

1. Civil Rights Act of 1964, Public Law 88-352, 78 Stat. 241.

2. Housing Act of 1949, 63 Stat. 413.

laws of the State of Tennessee (Tenn. Code Anno., §§ 13–801 et seq. and 13–901 et seq.). The Housing and Home Finance Agency was and is a public agency created under federal law (Title 12 U.S.C. § 1701 et seq. See also Title 42, U.S.C. § 1441 et seq.).

Thereafter the Nashville Housing Authority, acting under public laws of the State of Tennessee, condemned or purchased the 72 acres of land needed for the project and relocated the 301 families and 196 individuals who had been living there. Of these 301 families displaced, 288 were Negro. Of the 196 individuals displaced, 180 were Negro.

Thereafter the land was cleared, the site replanned, with provision for a wide boulevard (subsequently named James Robertson Parkway) to be built in an arc around the Capitol. Tracts were then developed for resale to private developers.

While this plan was proceeding, the State of Tennessee, employing state funds, acquired and improved other adjacent land on the steep slopes of Capitol Hill.

The trial judge in his opinion described the financing of this project in these terms:

"The total cost of the Project as of March 31, 1963 was $9,756,979. Of this amount, $5,696,560 was spent on land acquisition, $99,500 on site clearance, and $2,491,967 on site development. According to the most recently approved budget, the ultimate cost of the Project will be $11,727,901. Income from sales of land to private interests is expected to total $3,917,133, leaving a net project cost of $7,810,768. Two-thirds of the net project cost, or $5,207,179, is to be provided by federal grant. The remaining one-third, or $2,603,589, is charged to the Housing Authority. The Housing Authority's obligation is to be discharged by local cash grants totaling $1,488,422, and by non-cash credits * totaling $1,115,167. * (The

City receives a non-cash credit for the value of two facilities, a fire hall and a park, formerly located in the Project area and donated by the City to the Housing Authority. It also received a non-cash credit for benefits accruing to the Project from expenditures of the State of Tennessee for the purchase, clearance and landscaping of the adjacent lands on Capitol Hill.)" (Footnote in original.) Smith v. Holiday Inns of America, Inc., 220 F.Supp. 1, 4 (M.D.Tenn.1963).

Thus it is apparent that the public funds of the City of Nashville, the State of Tennessee, and the United States of America were inextricably intermingled in the financing of the Capitol Hill Redevelopment Project. It is also obvious that that project was carried out by public agencies created by and operating under the laws of the United States and the State of Tennessee.

After development of the total area, 38 acres in 17 parcels were offered for sale or lease to private developers. Two such parcels were purchased by defendant-appellant, Holiday Inns of America, Inc.

The contract for sale bound the purchaser to begin construction of a modern motel on James Robertson Parkway in the immediate vicinity of the State Capitol and to use the land for no other purpose. Covenants previously placed on record by the Nashville Housing Authority otherwise restricted the uses to which the purchasers could put the land and retained certain additional controls in the hands of the Authority.

The trial judge summarized these covenants thus:

"Article IV of the covenants in defining the 'general purpose' of the conditions, provides that the 'real property described in Article III hereof is subjected to the conditions, restrictions, reservations and easements contained herein for the purpose of insuring the use and improvement of each parcel or subparcel of land in such a way as to

produce an economically sound development of the entire project area and to reduce to a minimum any depressing and blighting influences.'

"Article V, requiring conformity to the plan for redevelopment, provides (Section 1) that 'the land in the Project Area, and every part thereof, shall be devoted to, and only to the uses permitted by the Redevelopment Plan for the Project, so long as said Redevelopment Plan remains in effect.'

"Section 2 retains governmental control in all-inclusive terms both as to use and improvements, providing that 'no use or change in use shall be established or made, nor shall any improvement be erected, constructed, placed, or altered on any building site until the proposal for such use or improvement is first submitted to and approved in writing by the Grantor. * * *'

"Section 5 provides that 'no covenant, agreement, lease, conveyance, or other instrument shall be effected or executed by the Grantor or by purchasers or lessees from it or any successors in interest of such purchasers or lessees, whereby land in the project area is restricted upon the basis of race, creed, or color, in the sale, lease or occupancy thereof.'

"By Article X it is specifically provided that the restrictive covenants shall run with the land and be binding upon the present owner and all parties claiming by, through, or under it. To enforce the covenants the Housing Authority specifically reserves, in addition to an ordinary action for damages, the right to 'sue for and obtain an injunction prohibitive or mandatory.'

"The permanence of the Project is secured by provisions that the restrictive covenants are to continue in effect for a period of twenty-one years from January 20, 1958, and automatically thereafter for successive periods of ten years each unless released by 70% of the total number of owners who are vested with title to at least 70% of the land subjected to the restrictive covenants." Smith v. Holiday Inns of America, Inc., supra at 6.

No restrictions pertaining to the actual occupancy of the motel were imposed in any form.

Subsequent to construction and opening of the Holiday Inn-Capitol Hill motel, plaintiff, a dentist from Memphis, Tennessee, on a business trip in Nashville for a state dental association, sought and was refused accommodations. It is conceded that the desk clerk told plaintiff that it was management's policy not to serve Negroes, and that the motel is operated under such policy.

Plaintiff then filed this suit as a class action on his own behalf and on behalf of other Negroes similarly situated. The suit sought a declaratory judgment that defendants are required by the Fifth and Fourteenth Amendments to the United States Constitution to offer accommodations to Negro citizens on the same terms as they are offered to white citizens, and sought injunctive and other equitable relief to prevent defendants' denial of said accommodations on grounds of race. Plaintiff invoked jurisdiction of the District Court under 28 U.S.C. § 1343(3) and 42 U.S.C. §§ 1981, 1982 and 1983.

After full evidentiary hearing the District Judge entered judgment for plaintiff, the pertinent portions of which we have quoted, and defendants appealed.

Defendants' contentions before this court are, first, that plaintiff failed to prove that defendants' actions were "under color of any state law, statute, ordinance, regulation, custom or usage" within the meaning of 28 U.S.C. § 1343(3) and 42 U.S.C. § 1983, or that defendants' actions were those of any arm or agency or instrumentality of the state, or that he was deprived of any "civil right" granted by any federal constitutional provision of law.

We affirm the judgment entered by the District Judge on the basis of Fourteenth Amendment violation found by him in his well-reasoned opinion (Smith v. Holiday Inns of America, Inc., supra).

The single pervasive fact which defendants seek to ignore but which this court cannot is that this motel is part and parcel of a large, significant, and continuing public enterprise—the Capitol Hill Redevelopment Project. This motel was conceived by the planners of this project, its creation was made possible by the execution of the project, and its existence is now governed to a great degree by the project's predetermined design and controls.

The United States Supreme Court has recently dealt with the question posed here of where private discriminatory conduct is so much a part of state action as to come under the ban of the equal protection clause of the Fourteenth Amendment.

In Burton v. Wilmington Parking Authority, supra, the Court was dealing with a lease to a restaurant in a public building designed primarily as a public parking facility. The restaurant claimed the right as a private institution to discriminate against potential Negro customers. As to this the Court said:

"The Civil Rights Cases, 109 U.S. 3 [3 S.Ct. 18, 27 L.Ed. 835] (1883), 'embedded in our constitutional law' the principle 'that the action inhibited by the first section [Equal Protection Clause] of the Fourteenth Amendment is only such action as may fairly be said to be that of the States. That Amendment erects no shield against merely private conduct, however discriminatory or wrongful.' Chief Justice Vinson in Shelley v. Kraemer, 334 U.S. 1, 13 [68 S.Ct. 836, 842, 92 L.Ed. 1161] (1948). It was language in the opinion in the Civil Rights Cases, supra, that phrased the broad test of state responsibility under the Fourteenth Amendment, predicting its consequence upon 'State action of every kind * * * which denies * * * the equal protection of the laws.' At p. 11 [of 109 U.S., at page 21 of 3 S.Ct.]. And only two Terms ago, some 75 years later, the same concept of state responsibility was interpreted as necessarily following upon 'state participation through any arrangement, management, funds or property.' Cooper v. Aaron, 358 U.S. 1, 4 [78 S.Ct. 1401, 1403, 3 L.Ed.2d 5] (1958). It is clear, as it always has been since the Civil Rights Cases, supra, that 'Individual invasion of individual rights is not the subject-matter of the amendment,' [109 U.S.] at p. 11 [3 S.Ct. at page 21], and that private conduct abridging individual rights does no violence to the Equal Protection Clause unless to some significant extent the State in any of its manifestations has been found to have become involved in it. Because the virtue of the right to equal protection of the laws could lie only in the breadth of its application, its constitutional assurance was reserved in terms whose imprecision was necessary if the right were to be enjoyed in the variety of individual-state relationships which the Amendment was designed to embrace. For the same reason, to fashion and apply a precise formula for recognition of state responsibility under the Equal Protection Clause is an 'impossible task' which 'This Court has never attempted.' Kotch v. [Board of River Port] Pilot Comm'rs, 330 U.S. 552, 556 [67 S.Ct. 910, 912, 91 L.Ed. 1093]. Only by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance." Burton v. Wilmington Parking Authority, supra, 365 U.S. at 721–722, 81 S.Ct. at 860.

We recognize, of course, that in the present case we deal with a distinction of some importance as compared to the facts of the Burton case. Here the property has not been leased, the fee has ac-

tually been transferred. But in both Burton and the instant case, the basic plan, the financing, the land acquisition, the execution of the plan, the continuing supervision of the plan are all state actions under state law and through state agencies. Under these circumstances we do not believe that the distinction between sale and lease is a crucial one.

We wish to be clear both as to what we do and what we do not decide. We do *not* hold that the mere fact that a state agency once held title to a piece of property affects private title forever after with some public quality. The public design, and the continuing public controls which we have recited, are major factors in the decision made herein. So, likewise, is the fact that part of the preconceived public design was to create a facility (a motel) which has service to the general public as its basic purpose.

It seems to this court clearly to be the sort of injustice which the Fourteenth Amendment prohibits, for the State of Tennessee to conceive and (in concert with the United States agency involved) carry out a plan to effect great improvement in the aesthetic qualities and public convenience of the area immediately surrounding its Capitol building and to do so by using the power of eminent domain to acquire the property of and evict many of its Negro citizens, and then to require and provide for a public accommodation (a motel) so that its citizens can conveniently visit the Capitol and then to allow the operators of that motel to ban some of Tennessee's own citizens from use of these accommodations thus provided, solely on grounds of race.

We believe that the right not to have state finances, state agencies and state laws employed to such a purpose and such a result is a right encompassed in the Equal Protection Clause of the Fourteenth Amendment.

Having thus found on this record, as did the District Judge, clear violation of the Fourteenth Amendment to the United States Constitution, we have no doubt of the District Court's jurisdiction to fashion a remedy. The action was brought under 28 U.S.C. § 1343(3) which reads:

"(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;" 28 U.S.C. § 1343(3).

As to this section, the United States Supreme Court has said:

"Its purpose is plain from the title of the legislation, 'An Act to enforce the Provisions of the Fourteenth Amendment to the Constitution of the United States, and for other Purposes.'" Monroe v. Pape, 365 U.S. 167, 171, 81 S.Ct. 473, 476, 5 L.Ed.2d 492 (1961).

In regard to the jurisdictional issues, we find no distinction between this case and Turner v. City of Memphis, 369 U.S. 350, 82 S.Ct. 805, 7 L.Ed.2d 762 (1962) and a variety of federal cases decided in other circuits. Derrington v. Plummer, 240 F.2d 922 (C.A.5, 1956), cert. denied, 353 U.S. 924, 77 S.Ct. 680, 1 L.Ed.2d 719 (1957); City of Greensboro v. Simkins, 246 F.2d 425 (C.A.4, 1957); Simkins v. Moses H. Cone Memorial Hospital, 323 F.2d 959 (C.A.4, 1963), cert. denied, 376 U.S. 938, 84 S.Ct. 793, 11 L.Ed.2d 659 (1964); Hampton v. City of Jacksonville, 304 F.2d 320 (C.A.5, 1962), cert. denied, Ghioto v. Hampton, 371 U.S. 911, 83 S.Ct. 256, 9 L.Ed.2d 170 (1962).

As we have indicated, our decision in this case is predicated on the Fourteenth Amendment violation found by the District Judge. Since relief is warranted on this ground alone, we do not pass upon plaintiff's claim of Fifth Amendment violation and the lower court judgment will be modified to eliminate reference thereto.

Affirmed as modified.