**Aaron HENRY et al., Plaintiffs-Appellees,**

**v.**

**FIRST NATIONAL BANK OF CLARKS-DALE et al., Defendants,**

**Claiborne Hardware Company et al., Defendants-Appellants.**

**No. 30295.**

United States Court of Appeals, Fifth Circuit.

June 23, 1971.

Rehearing and Rehearing En Banc Denied Sept. 16, 1971.

---

Dixon L. Pyles, W. E. Gore, Jr., Satterfield, Shell, Williams & Buford, Dan H. Shell, Pyles & Tucker, Jackson, Miss., for appellants.

Frank R. Parker, Lawrence D. Ross, George Taylor, Jackson, Miss., for Henry.

Jack H. Young, Fred L. Banks, Jr., Reuben V. Anderson, Armand Derfner, James Lewis, Jackson, Miss., for other appellees.

Before RIVES, THORNBERRY and CLARK, Circuit Judges.

THORNBERRY, Circuit Judge:

In this interlocutory appeal, filed pursuant to 28 U.S.C.A. § 1292(a),[1] the defendants-appellants, who are also complainants in a pending state civil action instituted by them in Mississippi Chancery Court, contest the propriety and validity of an order of the United States District Court of the Northern District of Mississippi entered on June 9, 1970, 50 F.R.D. 251, in which that court preliminarily enjoined the appellants (hereinafter referred to as "state court complainants") from further prosecuting the aforementioned state civil action then pending in the Chancery Court of the First Judicial District of Hinds County, Mississippi. A clear picture of what has transpired so far in the court below, and of what is and *is not* raised in this interlocutory appeal, is essential to an understanding of our disposition of this case.

---

1. 28 U.S.C.A. § 1292(a) provides in pertinent part that:

The courts of appeals shall have jurisdiction of appeals from:

(1) Interlocutory orders of the district courts of the United States, * * * granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court * * *.

## I. Facts and Procedural History

### A. *Background*

This controversy began in 1966 when a group of Negro citizens in Port Gibson, Mississippi, began a movement designed to protest what they considered to be racial discrimination practiced by the white merchants and local officials of Port Gibson. The group sought to achieve fair employment practices, fair treatment of Negro customers, and to otherwise eliminate discrimination through the use of economic pressure in the nature of a boycott of the merchants in Port Gibson. The boycott was effectuated by picketing to publicize the action, and by other non-picketing activities such as leafleting and public meetings through which citizens of Port Gibson were encouraged to join the boycott. After this boycott had been in effect for several years, twenty-three white merchants of Port Gibson, who were subject to the boycott, joined in a suit filed on or about November 4, 1969, in State Chancery Court in Hinds County, Mississippi, against (1) the National Association for the Advancement of Colored People, a nonresident (New York) corporation; (2) the Mississippi Action for Progress, Inc. (MAP), a federally-funded nonprofit resident corporation, and (3) approximately 150 named individuals, adult residents of Mississippi alleged to be working "in concert with and under the direction of * * * NAACP and MAP." (These three groups of defendants will be referred to hereinafter as the "state court defendants".) In addition, the state court complainants joined as defendants approximately fifty banks in the State of Mississippi alleged to have in their possession funds, property and effects of the nonresident defendant NAACP. The state court complainants alleged that the state court defendants had entered into a conspiracy in restraint of trade and had engaged in secondary boycotts and other malicious and wrongful interference with the state court complainants' businesses, all in violation of the Mississippi Anti-Trust Laws. Miss. Code Ann. 1088, 1089 (1942).[2] Among the allegations of

---

2. § 1088. *Trust and combine—defined.*

A trust or combine is a combination, contract, understanding or agreement, expressed or implied, between two or more persons, corporations or firms or association of persons or between any one or more of either with one or more of the others, when inimical to public welfare and the effect of which would be:

(a) To restrain trade;

(b) To limit, increase or reduce the price of a commodity;

(c) To limit, increase or reduce the production or output of a commodity;

(d) To hinder competition in the production, importation, manufacture, transportation, sale or purchase of a commodity;

(e) To engross or forestall a commodity;

(f) To issue, own or hold the certificate of stock of any trust and combine within the spirit of this statute knowing it to be such at the time of the issue or the acquisition or holding such certificate; or

(g) To place the control to any extent of business or of the proceeds or earnings thereof, contrary to the spirit and meaning of this chapter, in the power of trustees, by whatever name called; or

(h) To enable or empower any other person than themselves, their proper officers, agents and employees to dictate or control the management of business, contrary to the spirit and meaning of this chapter; or

(i) To unite or pool interest in the importation, manufacture, production, transportation, or price of a commodity, contrary to the spirit and meaning of this statute.

Any corporation, domestic or foreign, or any partnership, or individual, or other association, or person whatsoever, who is now, or shall hereafter create, enter into, become a member of, or a party to any trust or combine as hereinabove defined shall be deemed and adjudged guilty of a conspiracy to defraud and shall be subject to the penalties hereinafter provided. Any persons, association of persons, corporation, or corporations, domestic or foreign, who shall be a party or belong to a trust and combine shall be guilty of crime and upon conviction thereof shall for a first offense be fined in any sum not less

the state court complaint are charges that the state court defendants abused the customers of the state court complainants by threatening them with physical violence, addressing them with obscene and insulting language, destroying their property, and beating and assaulting them. For relief, the state court complainants sought (A) to have "the funds, property and effects of the nonresident defendant NAACP, its branches or auxiliary offices in the State of Mississippi, in the hands of and under the control of the resident (defendant Banks) * * * attached" [presumably as a source of damages] and held to await the decrees and orders of the court; (b) to have all the defendants (except the Banks) enjoined from "(1) Picketing in or about the business premises of the complainants, (2) stationing guards at or near the vicinity of the said premises or the complainants; (3) soliciting, advising, threatening, coercing and constraining any person from trading with complainants; (4) interfering with the businesses of the complainants; (5) boycotting the businesses of the complainants; (6) asking or demanding that others cease doing business with the complainants; and (7) committing acts in restraint of trade and/or in violation of the laws of the State of Mississippi thereto appertaining;" and (C) to recover damages in excess of 3.5 million dollars, for which the state court defendants would be held jointly and severally liable.

Shortly after the filing of this State Chancery suit, and without notice or hearing, the Clerk of the Chancery Court for the First Judicial District Court of Hinds County commenced to serve writs of attachment against what was purported to be the funds of the NAACP on deposit in various Banks around Mississippi, ordering the Banks to hold the funds of the NAACP until further notice. The Clerk's action was taken pur-

than one hundred dollars nor more than five thousand dollars and for a second or subsequent offense not less than two hundred dollars nor more than ten thousand dollars, and may be enjoined by a final decree of the chancery court, in a suit by the state on the relation of the attorney-general, from further prosecution of or doing of the acts constituting the trust and combine as defined in this chapter.

\* \* \* \* \*

1089. *Additional contracts or combinations not allowed by law.*

Any corporation, domestic or foreign, or individual, partnership, or association of persons whatsoever, who, with intent to accomplish the results herein prohibited or without such intent, shall accomplish such results to a degree inimical to public welfare, and shall thus:

(a) Restrain or attempt to restrain the freedom of trade or production;

(b) Or shall monopolize or attempt to monopolize the production, control or sale of any commodity, or the prosecution, management or control of any kind, class or description of business;

(c) Or shall engross or forestall or attempt to engross or forestall any commodity;

(d) Or shall destroy or attempt to destroy competition in the manufacture or sale of a commodity, by selling or offering the same for sale at a lower price at one place in the state than another or buying or offering to buy a commodity at a higher price at one place in the state than another, differences of freight and other necessary expenses of sale and delivery considered;

(e) Or shall destroy or attempt to destroy competition by rendering any service or manipulating, handling or storing any commodity for a less price in one locality than in another, the differences in the necessary expenses of carrying on the business considered, shall be deemed and held a trust and combine within the meaning and purpose of this section, and shall be liable to the pains, penalties, fines, forfeitures, judgments, and recoveries denounced against trusts and combines and shall be proceeded against in manner and form herein provided, as in case of other trusts and combines. And it shall be sufficient to make out a prima facie case of a violation of this subdivision of this section to show lower charge for the service therein mentioned in one locality than another, or to show a higher price paid for a commodity in one locality than another, differences of freight and other necessary expenses of operating business considered.

suant to Miss. Code Ann. § 2730 (1942),[3] which authorizes attachment of the property of non-residents without notice or hearing. It turned out, however, that the Banks upon which the writs of attachment were served had frozen not the assets of the non-resident NAACP, which was a named defendant in the state civil action, but rather the assets of the Mississippi State Conference of the NAACP, and of all local NAACP branches in the State of Mississippi, all of which organizations claim *not* to have been named as defendants in the state civil action, and claim further to be residents of the State of Mississippi and therefore not subject to its non-resident attachment statutes.

## B. *Proceedings Below: Stage I*

Believing that their constitutional rights to due process of law had been infringed by these attachments, the Mississippi State Conference and the Coahoma Branch of the NAACP, acting individually and on behalf of all other local branches similarly situated, filed a section 1983 action in federal court against the Banks which had frozen their funds pursuant to the writs of attachment. The original complaint in this suit was filed on November 7, 1969, by Aaron Henry, President of both the Mississippi State Conference and the Coahoma Branch. (The parties to the original complaint will be referred to hereinafter as the "original plaintiffs.") The original plaintiffs alleged that although they are authorized by the NAACP, a New York Corporation, to use the words "National Association for the Advancement of Colored People" as part of the title of their respective associations, and have agreed to abide by the constitution of the New York NAACP, they are completely autonomous and independent of the New York NAACP. They alleged further that they were not defendants to the state civil action and had received no notice of the suit, and that they are residents of the State of Mississippi and therefore not subject to its non-resident attachment procedures. Charging that they had been and were being irreparably injured in that all their operational funds, which were used to carry out constitutionally protected activities such as a voter registration drive, had been frozen without notice and hearing, and without even being named in the state civil action, they sought "to enjoin (the) attachment of property belonging to them made without compliance with fundamental constitutional guarantees." The original plaintiffs thus moved for a temporary restraining order and a preliminary injunction. The court below held a hearing on the original plaintiffs' motion for a temporary restraining order on November 17, 1969, at which one of the defendant Banks appeared and moved to have the state court complainants made parties to the proceeding on grounds that the state court complainants claimed an interest in the contested funds. The court below granted the Banks' motion, as well as the original plaintiffs' motion for a temporary restraining order. The court then set December 1, 1969 for a hearing on the original plaintiffs' motion for a preliminary injunction. At this hearing, the state court complainants appeared and con-

3. § 2730. *Attachment against non-residents—how effects or indebtedness bound.*

When a bill shall be filed for an attachment of the effects of a non-resident, absent or absconding debtor in the hands of persons in this state, or of the indebtedness of the defendant in this state to such non-resident, absent or absconding debtor, it shall be sufficient to bind such effect or indebtedness, that the summons for the defendant resident in this state shall have stated in or endorsed upon it the nature and object of the suit, and that it is to subject the effects in the hands of the resident defendant, and the indebtedness of such defendant to the non-resident, absent or absconding debtor, to the demand of the complainant; or, instead of such statement on the summons, a copy of the bill may be served with the summons, and shall bind the effects or indebtedness from the time of such service.

tested the motion. At the conclusion of this hearing, and on the strength of the evidence taken, along with the various pleadings of the parties, the court granted the original plaintiffs' motion for preliminary relief on December 15, 1969, ordering the defendant Banks "to release all funds [of the original plaintiffs] held by them pursuant to the writs of attachment * * * upon posting by plaintiffs * * * of a bond in the amount of 110% of [the] funds," and further preliminarily enjoining the state court complainants "from subjecting or causing to be subjected in anyway funds of [the original plaintiffs]

deposited in the defendant Banks to attachment or other process causing [the original plaintiffs] to be deprived of the use of their funds."

No appeal was taken by either the Banks or the state court complainants from the interlocutory injunction of December 15, 1969.[4] And although it may be within the scope of our reviewing powers on this appeal to consider the validity of this December 15 interlocutory injunction against the attachments, we decline to do so for several reasons.[5] First, the Banks, against whom a major command of the December 15 order runs, are not parties to the present ap-

4. At the same time the court below issued its preliminary injunction, it issued a separate order overruling the state court complainants' motion to dismiss the action. *See* Memorandum Opinion in No. DC 69-58-S, at 8 (Appendix, Vol. II, at 195). In the order overruling the motion to dismiss, the court below provided that the state court complainants might make application to the Fifth Circuit for an interlocutory appeal from the order, pursuant to 28 U.S.C.A. § 1292(b). The state court complainants did make application to this Court for interlocutory appeal from the district court's order denying their motion to dismiss, and leave to appeal was denied on March 4, 1970. Clairborne Hardware Co. et al. v. Aaron Henry et al., Misc.No. 1583 (March 4, 1970). Although the state court complainants had a *right* to appeal from the denial of the December 15 preliminary injunction pursuant to 28 U.S.C.A. § 1292(a), they chose not to do so, and the time for appealing that order has now lapsed. It is clear that the procedure for taking an appeal from an interlocutory order is precisely the same as that for taking an appeal from a final judgment, and that interlocutory appeals taken pursuant to 28 U.S.C.A. § 1292(a) must be timely filed. *See* Dahlen v. Kramer Mach. & Engineering Prod. Co., 10th Cir. 1961, 303 F.2d 293; Stiller v. Squeez-A-Purse Corp., 6th Cir. 1958, 251 F.2d 561. *See also* 9 Moore's Federal Practice ¶ 110.21.

5. Two questions pertaining to the proper scope of our review on this interlocutory appeal present themeselves in connection with the December 15, 1969 injunction. First, notwithstanding the failure of both the Banks and the state court complainants to file a timely appeal from the December 15 order, *see* note 4 *supra*, would

we have the power to take the matter up in connection with the review of some subsequent *appealable order in the case*? *See* 9 Moore's Federal Practice ¶ 110.21, at 256 (suggesting an affirmative answer); but *cf.* Stiller v. Squeez-A-Purse Corp., 6th Cir. 1958, 251 F.2d 561 (holding that a party may not circumvent the time requirements for appealing from interlocutory orders by repeatedly moving in the district court to dissolve the interlocutory order, and after repeated orders of denial, appeal from the last order of denial entered in the court, although such an appeal would be untimely if considered as taken from the first order).

Secondly, if consideration of the first order is not foreclosed by time requirements, would it be within the scope of our review of a subsequent interlocutory order to consider a prior order on our own motion? The general rule governing the scope of review on interlocutory appeals is that "the appellate court will not go any further * * * than is necessary to decide the matter upon appeal." 9 Moore's Federal Practice ¶ 110.25 [1], at 269–70. This rule-of-thumb, however, may be only a rule of orderly judicial administration. Once a timely appeal is taken from an order made appealable by statute, some courts have viewed their power to be plenary to the extent they choose to exercise it. *See, e. g.,* Hurwitz v. Directors Guild of America, Inc., 2d Cir., 364 F.2d 67, cert. denied, 385 U.S. 971, 87 S.Ct. 508, 17 L.Ed.2d 435 (1966). There is some question, therefore, whether we have the power to consider the December 15 order. Even if our review power on interlocutory appeals is plenary, however, we have decided not to exercise that power in this case for reasons discussed in the text *infra*.

peal and chose not to appeal the December 15 order when they could have done so.[6] Secondly, the state court complainants, who are the only appellants here, have confined their appeal to questioning the validity of a subsequent interlocutory order of the court entered on June 9, 1970 [7] (discussed at length hereinafter). Finally, we decline to examine the December 15, 1969 order because we think that an examination of that order would be completely unnecessary to a decision of the questions raised by the June 9 order on which this interlocutory appeal is based.[8] To the extent that we have discussed the December 15 order, we have done so for only two reasons: (1) To set the stage for our discussion of the June 9, 1970 crder, and (2) to notify the parties that the December 15 interlocutory injunction against the attachments remains standing,[9] pending a final determination by the district court of the many difficult questions raised by the original plaintiffs' procedural due process claim that all their

funds have been illegally attached without notice and hearing, pursuant to a Mississippi non-resident attachment statute, when these plaintiffs are in fact residents of the State of Mississippi and not even parties to the state civil suit, the filing of which generated the attachments. *Cf., e. g.,* Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971). As we proceed to what really concerns us on this appeal, therefore, we understand that the Banks and the state court complainants are presently preliminarily enjoined from withholding or causing to be withheld, pursuant to writs of attachment issued in connection with Cause No. 78353 in Chancery Court of the First Judicial District of Hinds County, Mississippi, funds belonging to the original plaintiffs deposited in the defendant Banks.

## C. *Proceedings Below: Stage II*

Several days following the day on which the district court announced its decision to issue a preliminary injunc-

6. *See* note 4 *supra.* Moreover, the state court complainants' failure to appeal the December 15 order appears to have been deliberate, for at the time they had a right to appeal that order pursuant to 28 U.S.C.A. § 1292(a), they did appeal a separate, certified order of the district court pursuant to 28 U.S.C.A. § 1292(b).

7. In their notice of appeal the state court complainants appeal only from "the interlocutory order of the United States District Court Judge for the Northern District of Mississippi, dated June 9, 1970, preliminary restraining and enjoining, until further order of the district court, the defendant and those persons in active concert and participation with them from prosecuting or causing to be prosecuted that certain action now pending in the Chancery Court of the First Judicial District of Hinds County, State of Mississippi, styled Claiborne Hardware Co., et al v. National Association for the Advancement of Colored People, No. 78,353 on the docket of said Court, entered in this action on June 10, 1970."
State Court Complainants' Notice of Appeal, Vol. II, Appendix, at 258–259.

No mention is made of the December 15, 1969, order in the Notice of Appeal, nor have the appellants—state court complainants—briefed whatever questions may be raised by the December 15 order. *See, e. g.,* text accompanying notes 19–20, *infra.*

8. None of the parties have suggested that the December 15, 1969 order interferes in anyway with the pending state civil action. *Cf.* Lynch v. Household Finance Co., D.Conn.1970, 318 F.Supp. 1111, 1115. And, indeed, we have difficulty seeing how it could interfere if the situation is as the original plaintiffs contended—that is, if the organizations against whom the attachments run are not even parties to the pending state suit. *See also* text accompanying notes 19–20, *infra.*

9. Neither party to this appeal has suggested that the interlocutory injunction of June 9, 1970 (discussed hereinafter) superseded in any way the interlocutory injunction of December 13, 1969, *cf.* Dahlen v. Kramer Mach. and Engineering Prod. Co., 10th Cir. 1961, 303 F.2d 293, nor does our study of the Record indicate that the December 15, 1969 order has been affected in any way by the subsequent orders of the district court.

tion restraining the withholding of the original plaintiffs' funds,[10] the plaintiffs took steps which greatly enlarged the scope of the issues in the case. Specifically, the NAACP and MAP, both named defendants in the state complainants' pending antitrust suit, were added as parties to the instant suit, and Aaron Henry, who appeared in the original complaint in his official capacity as President of the State Conference and the Coahoma Branch, but not as an individual, appeared in the amended complaint as an individual representing the class consisting of all individuals named in the State Chancery suit. At this time, the plaintiffs also filed an amended complaint which requested substantially broader relief than originally requested. Generally, the amended complaint sought further relief in the form of (1) an injunction restraining the state court complainants from further prosecuting the pending State Chancery suit, and (2) a declaratory judgment that the anti-trust statutes upon which the state court complainants were relying in the State Chancery suit were unconstitutional on their faces or as applied to the state court defendants.[11]

On December 31, 1969, the original plaintiffs, together with the newly added state court defendants, filed a motion for a preliminary injunction restraining the state court complainants from further prosecuting or causing to be prosecuted the State Chancery action. The state court complainants replied with numerous motions of their own, and all outstanding motions were heard by the district court on February 26, 1970. On June 9, 1970, obviously after careful deliberation, and accompanied by a lengthy and thoughtful memorandum opinion which has been very helpful to this Court, the district court entered its order granting, *inter alia*,[12] the motion for a preliminary injunction restraining the state court complainants from further prosecuting or causing to be prosecuted the State Chancery suit. It is from this order enjoining their pending antitrust suit in State Chancery court that the state court complainants now appeal. First, they challenge the jurisdiction of the district court. They contend that the district court lacked jurisdiction because (a) there is no section 1343(3) question presented in the complaint since the requisite "state action" to a civil rights action cannot be found in the mere filing of a private civil tort action in state court; and (b) there is no section 1331(a) federal question presented in the complaint since the amended complaint contains no more than what the state court defendants' defense would be to the State Chancery suit and the matter in controversy does not exceed $10,000.[13] Secondly, they urge that 28 U.S.C.A. § 2283, the anti-injunction statute, is an absolute bar to enjoining their pending state civil suit. Finally, they argue that "plaintiffs have no absolute right to picket, march and demonstrate." Because we have decided that federal jurisdiction was lacking to support the cause of action alleged in the amended complaint, we do not reach the second and third issues.

## II. Jurisdiction

Federal district courts have jurisdiction of actions to redress the deprivation, under color of any state law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the federal constitution or any Act of Congress providing for the equal rights of citizens. 28 U.S.C.A. §

10. The district court actually announced its decision from the bench at the conclusion of the hearing on December 1, 1969. The order was not formally entered until December 15, 1969, the day the original plaintiffs filed their motion to add the state court defendants to the suit.

11. *See* note 2 *supra*.

12. Numerous other motions were granted or denied in the district court's June 9 order. We consider none of them—only that portion of the order granting the motion for a preliminary injunction.

13. *See* note 15 *infra*.

1343(3) and 42 U.S.C.A. § 1983.[14] 1 W. Barron & A. Holtzoff, Federal Practice and Procedure ¶ 37 (Wright ed. 1960). It is, of course, essential to this "civil rights" jurisdiction that the deprivation of rights contested be "state action." [15] The difficult problem has always been to pinpoint the boundary between state action and nonstate, or private, action. In this case, we must decide on which side of the boundary lies the mere commencement of a private tort suit in state court.

Relying primarily on New York Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) and Shelley v. Kramer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948),[16] the district court held that "state action" may be found in the filing of a suit between private parties in state court. Both these decisions, therefore, deserve our careful attention. *New York Times* began as a civil suit between private parties in the state courts of Alabama. It resulted in a judgment in the Supreme Court of Alabama against the *Times*. In its opinion on certiorari, the United States Supreme Court devoted only a short paragraph to the problem of judicial involvement in a private lawsuit. It said:

> Although this is a civil lawsuit between private parties, the Alabama courts have applied a state rule of law which petitioners claim to impose invalid restrictions on their constitutional freedoms of speech and press. It matters not that the law has been applied in a civil action, and that it is common law only, though supplemented by statute * * * The test is

14. 28 U.S.C.A. § 1343(3) provides in pertinent part that

> [t]he district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person: * * *
>
> > (3) to redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege, or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens * * *.

42 U.S.C.A. § 1983, which is the statute creating a civil rights cause of action cognizable under 28 U.S.C.A. § 1343(3), provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

15. It is likewise essential to federal question jurisdiction under 28 U.S.C.A. § 1331 (a) that there be "state action" when the federal question alleged is one "arising under" the Bill of Rights and the Fourteenth Amendment. *See* Swift v. Fourth Nat'l Bank, M.D.Ga.1962, 205 F.Supp. 563, at 565. *See also* Hampton v. City of Jacksonville, 5th Cir. 1962, 304 F.2d 320,

322; Smith v. Holiday Inns of America, Inc., 6th Cir. 1964, 336 F.2d 630. In the instant case, the state court defendants predicated jurisdiction not only on section 1983 and 28 U.S.C.A. § 1343(3), but also on the Bill of Rights as applied to the States by the Fourteenth Amendment. Since "state action" is required for both, however, to decide the jurisdictional issue under 28 U.S.C.A. § 1343(3) is also to decide the jurisdictional issue under 28 U.S.C.A. § 1331(a). The two concepts have long been considered identical. United States v. Price, 383 U.S. 787, 86 S.Ct. 1152, at note 7, 16 L.Ed.2d 267 (1966).

16. The district court also relied on Edwards v. Habib, 1968, 130 U.S.App.D.C. 126, 397 F.2d 687, cert. denied, 393 U.S. 1016, 89 S.Ct. 618, 21 L.Ed.2d 560 (1969). It is true that Edwards v. Habib contains pages of discussion on the problem of "state action." In those pages, Judge Wright discussed many possible theories of resolving "state action" problems, but he rested his decision on none of them. In fact, he concluded that it was not necessary to decide whether there was "state action" in the case, because the case could be decided merely by construing an Act of Congress. As the only concurring judge pointed out, therefore, the dictum on "state action" was nothing more than "constitutional speculation" and for that reason the concurring judge declined to join in that part of the opinion. *See* 397 F.2d at 703. (Concurring opinion of McGowan, J.)

not the form in which state power has been applied but, whatever the form, *whether such power has in fact been exercised.*

376 U.S. at 265, 84 S.Ct. at 718 (emphasis added).

Shelley v. Kramer also began as a private civil suit in state court, where one party was seeking judicial enforcement of a racially restrictive covenant in a deed. The courts of Missouri enforced the covenant, and the United States Supreme Court on certiorari held that state enforcement of a private discriminatory contract violates the fourteenth amendment. The clear message of Shelley v. Kramer is that it is judicial *enforcement* of a private discriminatory contract that brings the otherwise "private action" within the ambit of the fourteenth amendment. What is common to both *Shelley* and *New York Times,* therefore, that is not present in our case, in that "state action" was found in those cases only *after* a final judgment or otherwise dispositive order [17] on the merits had been rendered by the state court. In contrast to these cases in which some dispositive action has been taken by a court, there is a long line of cases which conclude that a state, by merely holding its courts open to litigation of complaints, does not clothe the persons who use its judicial processes with the authority of the state. *See* Skolnick v. Martin, 7th Cir., 317 F.2d 855, cert. denied, 375 U.S. 908, 84 S.Ct. 199, 11 L.Ed.2d 146 (1963); Skolnick v. Spolar, 7th Cir., 317 F.2d 857, cert. denied, 375 U.S. 904, 84 S.Ct. 195, 11 L.Ed.2d 145 (1963); Moffett v. Commerce Trust Co., 8th Cir., 187 F.2d 242, cert. denied, 342 U.S. 818, 72 S.Ct. 32, 96 L.Ed. 618 (1951); Campo v. Niemeyer, 7th Cir. 1950, 182 F.2d 115; Swift v. Fourth Nat'l Bank, M.D.Ga. 1962, 205 F.Supp. 563; Bottone v. Lindsley, 10th Cir. 1948, 170 F.2d 705, cert. denied, 336 U.S. 944, 69 S.Ct. 810, 93 L.Ed. 1101 (1949). *See also* Jones v. Jones, 7th Cir. 1969, 410 F.2d 365, cert. denied, 396 U.S. 1013, 90 S.Ct. 547, 24 L.Ed.2d 505 (1970); Rhodes v. Meyer, 8th Cir., 334 F.2d 709, cert. denied, 379 U.S. 915, 85 S.Ct. 263, 13 L.Ed.2d 186 (1964); Sarelas v. Porikos, 7th Cir. 1963, 320 F.2d 827; Wardrop v. Ross, W.D.Pa.1970, 319 F.Supp. 1299; Drexler v. Walters, D.Minn.1968, 290 F.Supp. 150, and Pritt v. Johnson, M.D.Pa.1967, 264 F.Supp. 167 (holding that attorneys who participate in litigation are not acting under color of state law within the civil rights statute). The leading case on this question, which presents a fact pattern very similar to the case at hand, seems to be Stevens v. Frick, 2d Cir., 372 F.2d 378, cert. denied, 387 U.S. 920, 87 S.Ct. 2034, 18 L.Ed.2d 973 (1967). *Stevens* was an action to enjoin the defendant from further prosecuting a pending civil suit for libel in the Pennsylvania courts on grounds that the mere filing and pendency of the suit "chilled" the plaintiffs' first amendment rights. Like the plaintiffs herein, the plaintiffs in *Stevens* relied on Shelley v. Kramer to support civil rights jurisdiction in the case. The Second Circuit rejected this argument and, distinguishing *Shelley,* stated the following:

By contrast (with Shelley v. Kramer), in this case no order or judgment has been entered under which the power of the state is invoked to suppress the Stevens book, nor is there any Pennsylvania statute or case which authorizes the imposition of unconstitutional restraints on freedom of the press. * * * Thus far Pennsylvania has merely provided a forum to determine the rights of the parties. Both logic and precedent suggest that *merely by holding its courts open to litigation of complaints, regardless of how baseless they eventually prove to be, Pennsylvania does not clothe persons who use its judicial processes with the authority of the state.* * *

372 F.2d at 381 (emphasis added). The court concluded therefore that Stevens

---

17. *See* Machesky v. Bizzell, 5th Cir. 1969, 414 F.2d 283, 286, where the Court suggests that an injunction granted by a state court may constitute "state action."

did not have a claim cognizable under the Civil Rights Act.

The reason for the principles enunciated in the above-cited cases is manifest: Judicial bodies are supposed to be neutral; perhaps their most magnificent feature is their accessibility to all claimants, no matter how unfounded those claimants' contentions may turn out to be. To say that an open courthouse door constitutes "state action" is to assume that the party whose private suit is challenged as "state action" already has the court on his side before the adjudicatory process even commences. The essence of "state action," as defined in Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961), is action in which the "[s]tate has so far insinuated itself into a position of interdependence [with the otherwise 'private' person whose conduct is said to violate the fourteenth amendment] * * * that it must be recognized as a joint participant in the challenged activity, which, on that account, cannot be considered to have been so 'purely private' as to fall without the scope of the Fourteenth Amendment." 365 U.S. at 725, 81 S.Ct. at 862. To apply this test to the mere filing of a private civil complaint in a state court and conclude that "state action" results would be to demean the judicial process. It would be to forget that a court is an open forum before which each party is to have a full and fair opportunity to make his case. Only after both parties to a private civil action here had their day in court and the court has reached its decision and rendered its judgment does the full power of the state come into play in enforcing the judgment. We need only look at the status of the pending civil suit in the instant case to demonstrate this principle. As things stood at the time the court below issued its preliminary injunction, there were no indications what, if any, evidence the state court complainants would be able

to produce to support their various allegations of violent and abusive conduct, nor were there any indications whether the state court complainants would be able to substantiate their claimed loss of 3.5 million dollars. Thus, from a factual standpoint, it was entirely uncertain whether the state court complainants would even be able to carry their burden of proof in the case. From the standpoint of the legal questions presented, the state court complainants were proceeding to court armed with state antitrust statutes which, from all appearances, no Mississippi court has ever applied in a noncommercial situation. The state court defendants, on the other hand, no doubt would have armed themselves with the First Amendment to the United States Constitution and numerous Supreme Court opinions holding that their right to picket peacefully is constitutionally protected. At the time the court below issued its injunction, the Mississippi Chancery Court had made no dispositive determinations, factual or legal, on any of these difficult issues. In other words, the State, through its courts, had taken a stand on neither side of this very difficult controversy.

■ The effect of the relief the state court defendants seek in this Court, through their argument that the state court complainants' use of the Mississippi courts constitutes "state action," would be to shut the doors of the Mississippi courts to its citizens before those citizens have an opportunity to present their case. For us to take such a step, the situation must be drastic indeed. We are asked to take the step, however, on grounds that the state complainants' suit is unfounded and that its mere pendency chills the state court defendants' first amendment freedoms. *But see* Younger v. Harris, 401 U.S. 37, at 50, 91 S.Ct. 746, at 754, 27 L.Ed.2d 669 (1971). Remedies exist in our system of justice for unfounded suits in the common law actions for malicious prosecution and abuse of process.[18] And it

---

18. Mississippi jurisprudence recognizes a cause of action for abuse of process or malicious prosecution. Allen v. Ritter, 235 So.2d 253 (1970); Wutzke v. Wayne

is through the faithful enforcement of these remedies, rather than through denying access to the courts in the first instance, that, for the most part, the menace of bad faith private litigation should be controlled. The state defendants argue, however, that the "state action" needed to support their amended complaint attacking the state court complainants' antitrust suit can be found in the aforementioned prejudgment attachments of funds belonging to the various original plaintiffs. They rely heavily on the recent Supreme Court decision in Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1971). *Sniadach* involved the constitutionality of a Wisconsin prejudgment garnishment procedure. The debtor's wages in that case were garnished. She moved in state court that the garnishment proceedings be dismissed for failure to satisfy the due process requirements of the Fourteenth Amendment, and the Supreme Court of Wisconsin sustained the lower court in approving the procedure. The United States Supreme Court reversed, holding that the procedure violated the due process requirements of the Fourteenth Amendment. Although the Court did not address itself to the question whether "state action" was present in the garnishment procedure, implicit in its holding that the procedure violated the Fourteenth Amendment is the conclusion that "state action" was present, since "state action" is required to invoke the protection of the Fourteenth Amendment. *See* Hall v. Garson, 5th Cir. 1970, 430 F.2d 430, 439–440. Of course, as we have made clear at the outset of this opinion, neither the validity of the attachments below nor the validity of the

December 15 preliminary injunction against them is presented to us on this appeal. It is not necessary, therefore, for us to say whether, *taken alone*, involved "state action" for federal jurisdictional purposes. But even assuming for the moment that "state action" was involved in the attachments, we do not think it can be fairly said that such "state action" extends to the entire underlying private antitrust suit.

■ The very nature of the garnishments attacked in *Sniadach*, and of the attachments attacked below, makes it clear that these ministerial acts should be treated as separate matters from the suits underlying them. This much is indicated in the following language from *Sniadach*, describing the procedure under attack in that case:

What happens in Wisconsin is that the clerk of the court issues the summons at the request of the creditor's lawyer; and it is the latter who by serving the garnishee sets in motion the machinery whereby wages are frozen. *They may, it is true, be unfrozen if the trial of the main suit is ever had and the wage earner wins on the merits. But in the interim the wage earner is deprived of his enjoyment of earned wages without any opportunity to be heard* and to tender any defense he may have, whether it be fraud or otherwise.

395 U.S. at 338–339, 89 S.Ct. at 1821 (emphasis added). The administrative acts complained of in *Sniadach*, and, it may be argued, in the attachments below, had an indisputable aspect of finality wherein the full authority of the State was brought to bear on the complaining party.[19] But obviously this does not mean that there was any fi-

---

Lee's Grocery and Market, Inc., 199 So. 2d 438 (1967); Kitchens v. Barlow, 250 Miss. 121, 164 So.2d 745 (1964).

19. As a general rule, of course, the ministerial acts of a court's officers, who in the performance of their official responsibilities issue process and levy execution, are not considered to be action under color of state law. Dinwiddie v. Brown, 5th Cir., 230 F.2d 465, cert. denied, 351 U.S. 971, 76 S.Ct. 1041, 100 L.Ed. 1490

(1956); Schatte v. International Alliance, 9th Cir., 182 F.2d 158, cert. denied, 340 U.S. 827, 71 S.Ct. 64, 95 L.Ed. 608 (1950). *See also* Hanna v. Home Insurance Co., 5th Cir. 1960, 281 F.2d 298, cert. denied, 365 U.S. 838, 81 S.Ct. 751, 5 L.Ed.2d 747 (1961). The distinction between these cases and the *Sniadach*-type case can be found, we think, in the *effect* of the particular administrative act in question.

nality or any "state action" about the still pending "main suit" (as it was referred to in *Sniadach*), or "underlying suit" (as we shall call the state court complainants' antitrust suit here). Thus, to say that the "state action" contained in a summary garnishment, such as that in *Sniadach,* or that may be contained in a prejudgment attachment, such as that below, clothes the entire underlying suit in the garb of "state action" when no evidence has been presented in the underlying suit and no decision on the merits reached, is to sweep too broadly. Most of the time, the prejudgment procedure bears no meaningful relation to the underlying suit; it is true that the institution of the underlying suit triggers the prejudgment procedure, but that is as far as the relationship goes. Thereafter, the prejudgment procedure takes place regardless of the merits or substantive content of the underlying suit. In reality the prejudgment procedure is usually a separate matter, and clearly courts should be capable of treating it separately. Certainly, in the instant case, the prejudgment attachments should be viewed separately from the underlying suit predicated on the Mississippi antitrust laws. Under the Mississippi non-resident attachment statute, the writs would have issued regardless of what the underlying suit involved. As the state court defendants pointed out in their brief in this Court, under the Mississippi non-resident attachment procedure, the complaining party has complete control over whether a prejudgment attachment is made; all the statute requires is that the complaining party state the nature and object of his suit on the summons, and the Clerk will then serve the writs regardless of the merits of the complaining party's underlying suit. Moreover, in the instant proceedings the parties themselves consistently have treated the attachments as a separate matter from the suit. And justifiably so, for, as we pointed out earlier, the attachments ran against persons who allegedly *were not even parties* to the state "antitrust" suit. It must be remembered that the original plaintiffs below sought and obtained injunctive relief first against *only* the attachments on the strength, in part, of their contentions that they *were* residents and were *not* parties to the pending state suit. And the issuance of the injunction against the attachments apparently interfered in no way with the prosecution of the pending civil suit, for the state court defendants thereafter found it necessary to enter the instant proceeding and seek the much broader relief of an injunction against the pending state suit itself. *Cf.* Lynch v. Household Finance Corp., D. Conn.1970, 318 F.Supp. 1111, 1115. Finally, on this appeal the state court complainants have not appealed from the order enjoining the attachments, while they have appealed from the order enjoining the pending, underlying suit. What we are saying, therefore, is that the "state action" which may be found in ministerial acts performed in connection with a prejudgment attachment does not necessarily extend to the otherwise wholly private action of *a still undecided* underlying pending civil suit; [20] on the facts of this case, it most certainly does not.

Since we conclude that there is no "state action" to be found in the mere filing of a private civil tort action in state court, the district court's order of June 9, 1970, enjoining the prosecution of the pending state civil action should be vacated and the cause remanded with instructions to dismiss the amended complaint for lack of jurisdiction.

Vacated and remanded with directions.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

### PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.

20. *See notes 4–9, supra,* and accompanying text.